IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-2912-PAB

PEOPLE OF THE STATE OF COLORADO,

Plaintiff,

v.

ROBERT RODARTE,
FRANKIE SALAZAR,
JOSE SALAZAR, and
JAMES CISNEROS,

Defendants.

## MOTION TO VACATE, TO QUASH, AND FOR A PROTECTIVE ORDER

This Motion to Vacate, to Quash, and for a Protective Order is filed by the undersigned Assistant United States Attorney on behalf of the Federal Bureau of Investigation ("FBI"), and Robert Goffi, Special Agent of the FBI (referred to herein collectively as "the FBI"). For the reasons set forth below, the FBI respectfully requests that this motion be granted, that the El Paso County District Court's order compelling the release of the FBI's confidential informant file be vacated, that the subpoenas served on the FBI be quashed, and this Court enter a protective order prohibiting the release of the confidential informant file as ordered by the state court.

### FACTUAL BACKGROUND

The Defendants in the underlying criminal action are James Cisneros, Robert Rodarte, Jose Salazar, and Frankie Salazar. They are being prosecuted by the District Attorney's Office in El Paso District Court in the District Court for El Paso County, Colorado. (*People of the State of Colorado v. James Cisneros*, 09CR768; *People of the State of Colorado v. Robert Rodarte*, 09CR753, *People of the State of Colorado v. Frankie Salazar*, 09CR748, and *People of the State of Colorado v. Jose Salazar*, 09CR818).) Defendant Rodarte is charged with seven counts of

attempted murder and one count of conspiracy to commit first-degree murder, in connection with his alleged shooting into an occupied residence.  Mr. Rodarte was working as a confidential informant for the FBI, and was wearing a body wire, at the time of the alleged shooting.  Mr. Rodarte's informant activities also involved a more extensive gang investigation, as well as investigations out of state.

The other Defendants are charged with conspiracy to commit first-degree murder.  The specific facts of the alleged crimes are set forth in the state court's Order Denying Motion for Reconsideration and Granting Stay, a copy of which is attached hereto as Exhibit 1.

The FBI is not a party to the underlying state proceedings.  On July 27, 2009, James Cisneros served a subpoena on Robert Goffi, Special Agent of the FBI, in his pending state criminal case.  (*See* Ex. 2.)  The subpoena sought the FBI's confidential informant file for Mr. Rodarte and any information about him in the FBI's possession.  The subpoena also sought production of any audio recordings, recorded phone calls, and reports, including internal agency memos and notes of internal meetings, made during the course of a FBI gang investigation, the rough draft of any transcript from a hotel room meeting among the Defendants, and information that would identify the surveillance equipment that was used by FBI agents in an adjoining hotel room to monitor the activity in a room in which Mr. Rodarte was present.  (Ex. 2.)

The FBI responded in writing to the subpoena and produced certain responsive documentation that was relevant to the incident out of which the state prosecutions arise and that was subject to release pursuant to the Department of Justice's *Touhy* regulations.[1]  (*See* Ex. 3.) Specifically, the FBI produced the following:

All investigative reports from 281D-DN-66929 that reference James Cisneros;

Report dated 01/26/2009 that documents information from DN-5797 (Robert Rodarte) regarding James Cisneros;

---

[1] These regulations, 28 C.F.R. §§ 16.21 *et seq*., are explained further herein.  *See* Part A., infra.

> Report of FBI financial authorizations for DN-5797 (Robert Rodarte);
>
> Incomplete rough draft transcript of audio electronic surveillance conducted by the FBI;
>
> Audio recordings obtained by the FBI from the Colorado Department of Corrections; and
>
> All audio recordings of electronic surveillance conducted by the FBI in 281D-DN-66929.

(*Id*.)  The FBI explained that the other requested documents were not being produced because:

> [They] concern ongoing investigations unrelated to the charges against the defendant. Release of these records here is prohibited because disclosure could interfere with pending operations.  *See* 28 C.F.R. § 16.26(b)(4) and (5). With respect to the make and model of surveillance equipment, the FBI views the electronic surveillance conducted on 02/14/2009 as a sensitive investigative technique.  Disclosure of the make and/or model of the equipment utilized could impair the future effectiveness of such technique.  *See* 28 C.F.R § 16.26(b)(5).

(*Id*.)

The FBI then moved to quash the subpoena to the extent that it sought additional documentation. (*See* Ex. 4.)  On July 23, 2009, Mr. Goffi and counsel appeared at the subpoena return date in state court, at which time additional argument was received.  (*See* Ex. 5 (relevant pages of transcript).)  The state court found that Mr. Cisneros was entitled to documents that contained information regarding himself, the amounts that Mr. Rodarte was paid by the FBI, and any actions that Mr. Rodarte was to undertake or prohibited from undertaking.  (*Id*. at 9:7-9, 18:5-7.)  The state court found that Mr. Cisneros was not entitled to other information in the confidential informant file, such as that relating to other investigations.  (*Id*. at 9:10-16, 13:13-25, 14:24-15:1, 38:16-39 :13.)  It reserved ruling on, and requested supplemental briefing about, the request for information regarding the surveillance equipment.  (*Id*. at 44:6-45:23.)

Subsequently, Mr. Rodarte's counsel served a subpoena requesting the confidential informant file and the body recording device.  (Ex. 6.)  Mr. Cisneros' counsel served another subpoena requesting additional information about Mr. Rodarte and policies and guidelines regarding the use of confidential informants.  (Ex. 7.)  Frankie Salazar's counsel also served a subpoena requesting various information from the confidential informant file.  (*See* Ex. 8.) Another hearing was held on September 9, 2009, at which the Defendants joined in the

3

subpoenas served by the other defendants and the state court ordered that any documents produced to any Defendant would be produced to the other three Defendants. (*See* Ex. 9 at 35:29-36:2, 54:2-4 (relevant pages of transcript).)  The FBI supplemented its initial production to Defendant Cisneros and made additional portions of the confidential informant file available to the Defendants.  The FBI continued to object to the production of portions of the file that involved activities by Mr. Rodarte in connection with other investigations (including those taking place out of state), that had no relevance to the state court proceedings, that were not subject to disclosure under the *Touhy* regulations, that were classified and that were covered by the law enforcement and confidential informant privileges.  The state court did not order the release of any documents to which the FBI objected. (*Id*. at 25:9-26:10, 28:13-30:6, 64:12-65:18.)  However, it indicated that it could impose sanctions, such as prohibiting the People from calling FBI agents as witnesses, if it believed that the FBI was withholding documents that were discoverable under Colorado Rule 16. (*Id*. at 50:18-51:6.)

In an effort to expedite the resolution of various issues raised by the defendants, the FBI submitted the entirety of the confidential informant file to the state court for an *in camera* review. (*Id*. at 75:15-18, 73:20-25.)  The Court indicated that the FBI would be given the opportunity to object before the release of any part of the file. (*Id*. at 76:17-18.)

The state court reviewed the entire file and ruled on what it found to be discoverable in a hearing held on September 24, 2009.[2]  The FBI had already produced many of those documents and did not object to the production of remaining documents that the state court found to be discoverable.  Those documents were produced to Defendants.

Also on that date, at the request of Mr. Rodarte's counsel, the court held a closed hearing at which counsel for the People, the FBI, and Mr. Rodarte only were present.  At that hearing, the confidential informant file was discussed and Mr. Rodarte's counsel was permitted to explain why the file was needed for his defense.  Those proceedings were sealed due to concerns about

---

[2]The U.S. Attorney's Office has ordered, but not yet received, a copy of this transcript.

the contents of the confidential informant file that were discussed.

On November 24, 2009, at a hearing at which it did not permit any argument, the state court reversed course and ordered that the confidential informant file would be produced to all Defendants. Despite its prior rulings that the portions of the file for which the FBI did not consent to release were not discoverable, on that date, the court issued an oral ruling reversing itself and stating that it intended to release in all four cases the entirety of the FBI's confidential file, with two substantive exceptions, subject to a protective order. (*See* Ex. 10 (transcript).)

On December 2, 2009, the FBI moved to reconsider that order in all four cases and to stay the release of the file to allow the FBI to remove the issue to this Court in the event that the motion to reconsider was denied. (Exs. 11, 12, 13, 14.) The FBI submitted a declaration with that motion that further explained, to the extent possible without revealing the confidential information at issue, the concerns regarding the release of the file. (Ex. 15.) The FBI explained that Mr. Rodarte had been involved in an investigation that was on-going in another state, which had no relevance to the crimes charges in Colorado. Specifically:

> These documents identify the subject of an ongoing investigation in another FBI office. The documents also contain the symbol number for another source working that ongoing investigation. If the current or potential subjects from that out of state matter become aware of the scope of the investigation and the use of sources in that investigation, these current or potential subjects could take action to frustrate the ability of the FBI to successfully conduct the investigation.

(*Id*. ¶ 8.) The FBI also explained that documentation relating to the manner in which it recruits and compensates confidential informants could thwart FBI's ability to recruit and operate informants in the future. (*Id*. ¶ 9.) The FBI requested the state court to reconsider its order or to consider instead one of several alternatives which would protect the sensitive information about which the FBI was concerned while at the same time addressing the issues raised by Defendants.

On December 8, 2009, the state court issued a written order in all four cases denying the motion to reconsider but granting the stay to allow the FBI to remove the issue. (Ex. 1.) The FBI filed a notice of removal on December 11, 2009 (Doc. 1) pursuant to 28 U.S.C. § 1442(a).

## ARGUMENT

A.  **The Disclosure of Any Documents from the FBI is Governed by the Department of Justice's *Touhy* Regulations**.

Section 301 of Title 5 of the United States Code provides:

> The head of an Executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.

5 U.S.C. § 301. Regulations promulgated pursuant to this statue and which govern a request for testimony by a federal employee or the production of documents from a federal agency are commonly referred "*Touhy*" regulations.

This name comes from the case of *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), in which a prisoner instituted a federal *habeas corpus* proceeding against the prison warden alleging that he was being held in violation of the Due Process clause. In an effort to prove his case, the prisoner subpoenaed documents and testimony from a FBI agent. When the agent, following the instructions of the agency chief, refused to comply with the subpoena *duces tecum*, the district court held him in contempt. The Supreme Court held that, when the head of an executive agency acts under authority of the housekeeping statute and orders a subordinate not to comply with a subpoena, the subordinate may not be held in contempt of court.[1]  *Id*. at 468.

Agency regulations governing requests for employee testimony or the production of documents are now routinely referred to as *Touhy* regulations. A party seeking testimony or production of documents must comply with the relevant agency's *Touhy* regulations. Cases since *Touhy* have consistently affirmed the validity of these types of regulations. *See, e.g., Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986) (holding that the *Touhy* doctrine is jurisdictional and thus precludes a court from compelling a federal employee to testify, regardless of the agency's reasons); *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) ("As the Supreme Court has long held, such regulations unquestionably give Justice Department employees the authority, when so ordered by supervisors, to refuse confidential files when the United States is not a party

to a legal action."). These regulations amount to a narrow waiver of the sovereign immunity of the United States. *Sparks*, 978 F.2d at 234-35

Here, the applicable *Touhy* regulations are those promulgated by the Department of Justice. Those regulations are found at 28 C.F.R. §§ 16.21, *et seq*., and provide that

> In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department officials in accordance with §§ 16.24 and 16.25 of this part.

28 C.F.R. §16.22(a).

Section 16.26 sets forth the factors to be considered by the Department of Justice in deciding whether disclosure should be made, including the following which are relevant here:

> (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>
> (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

*Id*. § 16.26(a). That section also provides that disclosure <u>will not</u> be made if any of the following factors (among others) exist:

> (4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,
>
> (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with law enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

*Id*. § 16.26(a).

A state court's assertion of authority to enforce a subpoena would violate the Supremacy Clause because, by compelling a federal employee to testify or produce documents in contravention of an agency's regulation, the court would be overriding an agency regulation. Such regulations, once validly promulgated, have the force and effect of federal law and are

7

binding on state courts. *See Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989); *cf. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (federal regulations "have no less pre-emptive effect than federal statutes").

Thus, production of documents by the FBI is limited by the terms of these regulations. Compliance with a subpoena may not otherwise be compelled in state proceedings. 28 C.F.R. § 16.28; *Boske v. Commingore*, 177 U.S. 459 (1900); *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968); *In re Gray*, 1998 WL 712663 (10th Cir. 1998) (unpublished).

**B.    The *Touhy* Regulations and Sovereign Immunity Preclude the Disclosure of Contents of the Confidential Informant File to which the FBI does not Consent.**

Here, after being served with subpoenas, the FBI objected to the production of documents from FBI's confidential informant regarding Robert Rodarte that were unrelated to the charges against the Defendants. Other information in Mr. Rodarte's file relates to other investigations that are still active and on-going and would identify sources and suspects, and thus production of those documents could interfere with the FBI's pending law enforcement operations. *See* 28 C.F.R. § 16.26(b)(4) and (5). The FBI also objected to disclosing specific information about the surveillance equipment it used on the grounds that the use of that equipment was a sensitive investigation technique and disclosure of that information could impair the future use of that equipment. *See id*. § 16.26(b)(5).[3]

In its November 24th ruling, the state court ordered, over the FBI's objection, that it would release the contents of the FBI's confidential informant file to all Defendants. Where, as here, a federal agency has not authorized the release of the agency's files, a state court cannot order production. *See, e.g.*, *In re Gray*, 1998 WL 712663, at *1; *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998); *United States v. Williams*, 170 F.3d 431 (4th Cir. 1999); *Smith v. CRC Builders Co.*, 626 F. Supp. 12, 13-14 (D. Colo. 1983).

The state court's ruling is contrary to the doctrine of sovereign immunity and should be

---

[3]The state court did not order the production of this equipment and therefore this is not at issue in this removed case.

vacated. In *Boron Oil*, for example, the court held that the doctrine of sovereign immunity protected federal officials from having to testify in state court proceedings regarding information acquired in the course of official federal duties. The court explained that:

> the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding "interfere(s) with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.

*Id*. at 70-71. The court concluded that the sovereign immunity "doctrine . . . precluded the state court [in the absence of appropriate EPA authorization] . . . from exercising jurisdiction to compel [the EPA employee] to testify . . . ." *Id*.

*Smith v. Cromer* is particularly instructive here. In that case, the defendant had worked as a confidential informant for the Drug Enforcement Agency. 159 F.3d at 877. He was being prosecuted in state court for narcotics changes. *Id*. He sought to compel the production of <u>his own confidential informant file</u>. *Id*. There, as here, the DEA had provided a copy of the file to the state court for an *in camera* review. The state court found the information to be discoverable and ordered it produced to the defendant. The DEA removed this issue from state to federal court and the federal district court granted a motion to quash and for protective order. *Id*.

The Fourth Circuit affirmed the order quashing the subpoena and entering a protective order. The court first found that sovereign immunity precluded the state court from enforcing the subpoenas and disclosing the documents. *Id*. at 879. The court rejected arguments that the federal government had waived this immunity by providing partial disclosures to the defendant or by providing a copy of the file to the state court for an *in camera* review. *Id*. at 880. The court concluded that the state court lacked any authority to enforce the subpoenas. *Id*. The court noted that the criminal defendant had a remedy of seeking review of the DEA's decision not to release the file under the Administrative Procedure Act ("APA"). (The court also found that the confidential informant privilege barred disclosure as explained in Part C., below).

Similarly, the fact that the FBI, rather than a state agency, is in possession of information relevant to the state prosecution does not change the analysis. In *United States v. Williams*, the defendant was facing state murder charges and had served a subpoena on the FBI seeking disclosure of the FBI's file regarding the homicide. 170 F.3d at 432. The defendant argued that sovereign immunity did not bar his request for the file "because the FBI was assisting state authorities in their investigation of the state crimes for which he was ultimately indicted." *Id*. at 434. The court rejected this argument, held that the FBI could not be compelled to disclose the information, and noted that if the defendant was dissatisfied with the FBI's response, he was "not without recourse" because he could seek review of that determination under the APA. *Id*.

Sovereign immunity precludes a state court from ordering the disclosure the contents of a federal agency's file over that agency's objections pursuant to its *Touhy* regulations. The FBI has not waived sovereign immunity and objects to the state court proceeding in the manner that it indicated in its November 24th oral order and the order on the motion for reconsideration. Therefore, the court's order should be vacated, the subpoenas should be quashed, and a protective order should be entered preventing the contemplated dissemination of the file.

C. **The Law Enforcement and Confidential Informant Privileges Prevent Disclosure of the Contents of the Confidential Informant File.**

Even setting aside issues of the *Touhy* regulations and sovereign immunity, the FBI's confidential informant file should not be disclosed because it is privileged. The U.S. Supreme Court recognized the law enforcement privilege in *Rovario v. United States*, 353 U.S. 53 (1957). In that case, the Court found that a request to disclose the identity of a confidential informant

> calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id*. at 62.

The privilege is held by the <u>government</u>, not by the confidential informant. *Id.* at 59. The

purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Myerson (In re Dep't of Investigation),* 856 F.2d 481, 484 (2d Cir. 1988). The party seeking documents protected by the law enforcement privilege has the burden to establish a sufficient need for the documents. *Collins v. Shearson/American Express, Inc.,* 112 F.R.D. 227, 228 (D.D.C. 1986). Relevance alone does not establish a need. *Id*. at 229-30.[4]

The state court was thus required to engage in the *Rovario* balancing test. Here, as that court repeatedly found on prior occasions, this balancing does not favor a wholesale disclosure of Mr. Rodarte's confidential informant file.

First, the public interest is overwhelmingly against public disclosure. As is found in *Myerson,* these interests include preventing disclosure of law enforcement techniques and procedures, preserving the confidentiality of sources, to protect witness and law enforcement personnel, safeguarding the privacy of individuals involved in an investigation, and otherwise preventing interference with an investigation." 856 F.2d at 484. Here, all of these factors weigh against disclosure. As the declaration from the FBI submitted to the state court shows, disclosure of this file would reveal sensitive law enforcement techniques and procedures, would identify a confidential informant, would reveal the subject of another investigation, and would interfere with an active investigation being conducted by the FBI in another state, as well as interfere with future investigations and future recruitment and use of confidential informants. (*See* Ex. 15.)

Second, this public interest does not remotely begin to be outweighed by the Defendants' rights to prepare their defense. Defendants have not met their burdens of showing a sufficient need for these documents. All documents from the file relating to the incident at issue in this

---

[4] Further, Congress has expressly recognized the need to protect this type of information in the context of the Freedom of Information Act. That Act expressly exempts from disclosure information that would disclose techniques and procedures for law enforcement investigations. *See* 5 U.S.C. § 552(b)(7)(E).

case have been released.  Defendants provided the state court with nothing more than hypothetical arguments from counsel that the file might possibly contain exculpatory information or information about which they may conceivably cross-examine law enforcement witnesses.

Moreover, **the FBI holds this privilege; Mr. Rodarte does not**.  The state court seemed to be swayed by the fact that Mr. Rodarte is both the confidential informant and one of the Defendants.  However, that fact does not change this analysis or entitle him, much less his co-defendants, to the contents of the file.  In fact, whether or not the confidential informant has become a defendant who is being prosecuted is not one of the factors to be weighed under *Rovario*.  The confidential informant file is the FBI's file, and not a file maintained by, or for the benefit, of Mr. Rodarte.  The file contains documents and information to which Mr. Rodarte has not been, and could not be, privy to, regardless of whether he had later been prosecuted.  (Ex. 15 ¶ 6.)  Thus, courts have denied access to confidential informant files even where the confidential informant himself was being prosecuted.  *See, e.g.*, *Smith*, 159 F.3d at 879-80.

Here again, *Smith v. Cromer* is very instructive.  In that case, the defendant argued that he was acting as a federal informant during the time that he allegedly committed the state narcotics charges—*i.e.*, if true, this information would have provided a complete defense to the crime, not just some potential information for cross-examination—and that his constitutional rights would be violated if he was not provided access to the DEA's confidential informant file about him.  The Fourth Circuit disagreed.  The Fourth Circuit affirmed the district court's determination that—as is the case here—the defendant "did not provide the court with specific facts that would likely be in his informant file that would establish that he was acting as a federal cooperating individual at the time of his alleged violation." *Id*. at 882.  The court also noted that the district court found that the defendant's desire to introduce evidence of his other cooperating activities—as Mr. Rodarte seeks to do here—was not sufficient to compel disclosure.  *Id*.  Further—as is also the case here—the district court noted that the defendant would be able to cross examine the DEA agent about his confidential informant activities.  *Id*.  Finally, the court

found that the defendant's Sixth Amendment right to compulsory process would not be violated by quashing the subpoenas issued to Department of Justice officials. *Id*. at 882-83.

Still further, there is no basis for the state court to disclose the entirety of the file to Mr. Rodarte's co-defendants. The other Defendants have set forth no right at all to the contents of that file. Their case has been severed from Mr. Rodarte's case. All relevant documents about the incident at issue, the amounts that Mr. Rodarte was paid, and his agreement with the FBI have been disclosed. At the hearing on November 24, the state court expressed some speculation that Mr. Rodarte may have informed the co-defendants of his confidential informant activities. (Ex. 10 at 4.) However, it noted that it could not "guess" whether that had occurred, and the FBI is unaware of any information in the record indicating that it did. Further, the fact that Mr. Rodarte might know the identity of another confidential informant reference in the file does not mean that his co-defendants do. There is no basis to disclose this information to other Defendants.

The use of a protective order in an effort to mitigate the harm that would result from the release of this information is inadequate to address the concerns set forth by the FBI. It would still allow the Defendants themselves—two of whom are not in custody at this time—access to this information, which could potentially be used for improper purposes, such as to inform targets of the existence of the investigation or endanger the safety of another confidential informant or law enforcement officers. As the state court noted, the trial in this case will be open to the public. If the contents of the file are disclosed in open court, the protective order will be meaningless. Further, this case has received press attention. Release of this information into the public domain, even if inadvertent, would cause irreparable harm to the FBI.

**D.      Less-Intrusive Alternatives Remain Available.**

As several courts have noted, preventing disclosure of a confidential informant file in response to a subpoena does not leave Defendants without a remedy. Defendants can bring an action under the Administrative Procedure Act. Here, despite the facts that Defendants have been on notice for several months that the FBI was not going to turn over the confidential

informant file in its entirety and that the trial in this matter has been continued, to undersigned counsel's knowledge, none of the Defendants has pursued this avenue of relief.

The FBI has repeatedly acknowledged the concern about the constitutional rights of the Defendants. For that reason, the FBI suggested to the state court a number of alternatives that would preserve the confidentiality of protected information, meet the standards set forth by the U.S. Supreme Court for determining when disclosure is warranted, and preserve the rights of Defendants to present their defense to the jury.

First, to the extent that state court, after reviewing the file *in camera*, believed that any other portions of the file potentially met the *Rovario* test for disclosure, it could hold a hearing on that issue and determine whether to produce those portions only. This would allow the FBI to explain its specific concerns and the Defendants to articulate their need for the documents.

Second, the state court could have provided the FBI with the documents it intended to produce and allowed the FBI to set forth specific objections prior to the release of any such information. After the case was removed, the state court did provide the FBI with a copy of the documents it had intended to produce from the confidential informant file. The FBI has since prepared a redacted form of those documents. The redactions are very limited—they involve the redactions of symbol numbers that identify sources and of information (such as names, positions, and place of employment) that would identify targets and their family members. The FBI is prepared to submit this to the state court for *in camera* review in hopes to resolve this issue, either after a remand or at an earlier time if this Court believes such an approach is appropriate.[5]

Third, to the extent that Mr. Rodarte believes there are specific facts in the file he needs for his defense, he could propose a stipulation regarding those facts or submit those facts to the FBI, who could then confirm or deny in writing if the information is found in the file. The state court could verify the accuracy of the FBI's response since it reviewed the file *in camera*. This

---

[5]Because the state court had denied the motion to reconsider and intended to release the documents within a week of that order, the FBI had no choice but to remove the case at that time.

would allow Mr. Rodarte to question or cross-examine FBI agents about the information at trial.

Finally, as mentioned above, Defendants have the alternative remedy of bringing an action under the Administrative Procedures Act, which they have apparently declined to pursue.

As noted above, the FBI presented these alternatives to the state court. The state court declined to adopt any of them without an explanation. After the state court's denial of the motion to reconsider, and due to the imminency of the release of this information, the FBI was left with no option other than to remove this matter.

The FBI respectfully submits that the state court's proposed course of action—to produce the file without any redactions—violates sovereign immunity, does not comply with Supreme Court precedent, and could seriously endanger on-going and active investigations, as well as the safety of individuals involved in those investigations. Release of the file, which has references to serious threats of violence and murder, could result in danger to law enforcement personnel and confidential informants. Therefore, the FBI's motion should be granted.

## CONCLUSION

Because the El Paso County District Court lacked jurisdiction to enter the order and because the order violates federal law, the FBI respectfully requests that this Court vacate the order, quash the subpoenas, and enter a protective order prohibiting the dissemination of the confidential informant file. Thereafter, the Court should remand the case back to the El Paso County District Court for further proceedings in that court.

DATED this 15th day of January, 2010.        Respectfully submitted,

                                                     DAVID M. GAOUETTE
                                                   United States Attorney

                                                   s/ Amy L. Padden
                                                   Amy L. Padden
                                                   Assistant United States Attorney
                                                   1225 Seventeenth Street, Suite 700
                                                   Denver, Colorado  80202
                                                   Telephone:  (303) 454-0100
                                                   amy.padden@usdoj.gov
                                                   Attorneys for the FBI

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system

Counsel for Defendants:

*For James Cisneros*:

Shimon Kohn
skohn@kohndefense.com

*For Robert Rodarte*:

Warren Richard Williamson
Rick_Williamson@fd.org

Eric S. Anaya
anaya@springscriminallaw.com

Cynthia Ann McKedy
mckedy@springscriminallaw.com

*For Frankie Salazar:*

Patricia Behan
patricia.behan@coloradodefenders.us

and I served the foregoing motion on January 15, 2010, by depositing the same in the U.S. Mail, postage prepaid, addressed to:

Counsel for Plaintiff:

Terry Sample
Jennifer Viehman
El Paso District Attorney's Office
105 E. Vermigo
Colorado Springs, CO 80903

Counsel for Defendants:

*For Jose Salazar:*

Victoria Ringler
19 N. Tejon, Suite 40
Colorado Springs, CO 80903

                                                   s/ Amy L. Padden
                                                   Amy L. Padden