| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO<br>270 S. Tejon Street<br>Colorado Springs, Colorado 80903 | |
| THE PEOPLE OF THE STATE OF COLORADO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES CISNEROS,<br><br>Defendant. | FILED IN THE DISTRICT AND COUNTY COURTS OF EL PASO COUNTY, COLORADO<br>JUL 2 3 2009<br>M.V. PERRY<br>CLERK OF COURT<br><br>▲ COURT USE ONLY ▲ |
| Attorneys for Special Agent Robert Goffi:<br>DAVID M. GAOUETTE<br>Acting U.S. Attorney<br>AMY L. PADDEN, 28372*<br>Assistant U.S. Attorney<br>1225 Seventeenth Street, Suite 700<br>Denver, CO 80202<br>(303) 454-0100<br>Fax: (303) 454-0408<br><br>*Counsel of Record | Case No.: 2009CR768 |
| **MOTION TO QUASH SUBPOENA *DUCES TECUM*** | |

COMES NOW Robert Goffi, Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, through the United States Attorney for the District of Colorado, and moves pursuant to Rule 17(c) of the Colorado Rules of Criminal Procedure and Sections 16.21-16.28 of 28 Code of Federal Regulations for an order quashing, in part, the subpoena *duces tecum* sent to Special Agent Goffi on June 30, 2009. In support of this motion, the FBI and Mr. Goffi aver as follows:

EXHIBIT 4

1. Neither the United States nor the FBI is a party to the above-captioned criminal action.

2. On or about June 30, 2009, defense counsel sent Robert Goffi a subpoena in the above-captioned matter, requesting the production of certain documents in the possession of the FBI to take place in this Court on July 23, 2009. *See* Subpoena attached hereto as Exhibit 1. That subpoena sought production of the following seven categories of documents from the FBI:

    a. The "[e]ntire confidential informant (CI) file for Robert Rodarte, DOB 3/12/1965. This subpoena requires that [the] above named agent or agency produce any and all reports involving Mr. Rodarte's participation and/or involvement in any investigation either as a suspect or as a confidential informant, to include any compensation or consideration received by Mr. Rodarte."

    b. All information in the possession of the FBI regarding confidential informant DN-5797.

    c. All audio recordings made during the course of the investigation of FBI case number 281-D-DN-66929.

    d. All reports for FBI case number 281D-DN-66929, including internal agency memos and notes of any internal meetings.

    e. All phone calls recorded by the Colorado Department of Corrections relating to FBI case number 281D-DN-66929.

EXHIBIT 4

   f. The "[r]ough draft of [any] transcript from [the] DVD from hotel room meeting that took place on 2/14/2009."

   g. Information that would identify the surveillance equipment that was used by FBI agents in an adjoining hotel room to monitor the activity in a room in which Mr. Rodarte was present.

  3. The United States Department of Justice, of which the FBI is a component, has promulgated regulations governing the production of documents by its federal employees in matters in which the United States is not a party. These are set forth at 28 C.F.R. §§ 16.21-16.28, a copy of which is attached hereto as Exhibit 2. These regulations set forth the conditions under which such employees may testify or provide documents in proceedings such as this action.

  4. On July 16, 2009, the FBI, through Special Agent Goffi, issued a letter stating that the FBI would produce the vast majority of the documents requested by the subpoena. *See* attached letter, Exhibit 3. Specifically, the FBI agreed to produce, and has already produced in advance of the subpoena return date, requested documents in its possession relating to the Defendant, James Cisneros.

  5. As explained in the letter, the FBI objected to the production of documents from confidential informant Robert Rodarte's file that were unrelated to the charges against the Defendant. The reasons that those documents were not produced is that other information in Mr. Rodarte's file relates to other investigations that are still active and on-going, and thus production of those documents could interfere with the FBI's pending law

3

EXHIBIT 4

enforcement operations. *See* 28 C.F.R. § 16.26(b)(4) and (5). The FBI also objected to disclosing specific information about the surveillance equipment it used on the grounds that the use of that equipment was a sensitive investigation technique and disclosure of that information could impair the future use of that equipment. *See id.* § 16.26(b)(5).

6. The DOJ regulations cited above amount to a very narrow waiver of the sovereign immunity of the United States. Authority to permit the production of documents by the FBI is strictly limited by the terms of these regulations. The Department of Justice must be able to determine whether the interests favoring disclosure outweigh the interests in avoiding disruptions such as those presented here. The regulations have the force of federal law. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Compliance with a subpoena may not otherwise be compelled in state proceedings. 28 C.F.R. § 16.28; *Boske v. Commingore*, 177 U.S. 459 (1900); *Saunders v. Great Western Sugar Co.*, 396 F.2d 794 (10th Cir. 1968).

7. In *Touhy*, the Supreme Court held that a subordinate federal employee could not be found in contempt of court for refusing to produce subpoenaed documents where his refusal was based upon an agency regulation prohibiting disclosure of nonpublic documents without authorization from the agency head. 340 U.S. at 468. Cases since *Touhy* have consistently affirmed the validity of similar regulations. *See, e.g., Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986) (holding that the *Touhy* doctrine is jurisdictional and thus precludes a court from compelling a federal employee to testify, regardless of the agency's reasons); *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) ("As the Supreme Court has long

held, such regulations unquestionably give Justice Department employees the authority, when so ordered by supervisors, to refuse confidential files when the United States is not a party to a legal action."); *David Enterprises v. EPA*, 877 F.2d 1181 (3d Cir. 1989) (refusing to overturn an agency's decision not to allow testimony by agency employee).

8. Here, the Department's regulations, by virtue of the Supremacy Clause, prevent any state court from enforcing a subpoena against federal agencies and officers. *See* U.S. Const. Art. VI, cl. 2. A state court's assertion of authority to enforce a subpoena would violate the Supremacy Clause because, by compelling a federal employee to testify or produce documents in contravention of an agency's regulation, the court would be overriding an agency regulation. Such regulations, once validly promulgated, have the force and effect of federal law and are binding on state courts. *Boron Oil*, 873 F.2d at 71; *see also Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 158 (Tex. 1993) (regulations have the same preemptive effect as statutes).

9. In addition, a subpoena issued to a federal employee also must be quashed based upon the United States' sovereign immunity, which is waived only for actions "in a court of the United States," which refers to federal courts, not state courts. *See United States v. Mattingly,* 663 F.3d 68, 68 (10th Cir. 1981); *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989); *Smith v. CRC Builders Co.*, 626 F. Supp. 12, 13-14 (D. Colo. 1983). In *Boron Oil*, for example, the court held that the doctrine of sovereign immunity protected federal officials from having to testify in state court proceedings regarding information acquired in the course of official federal duties. The court explained that:

EXHIBIT 4

> the nature of the subpoena proceeding against a federal
> employee to compel him to testify about information obtained
> in his official capacity is inherently that of an action against the
> United States because such a proceeding "interfere(s) with the
> public administration" and compels the federal agency to act in
> a manner different from that in which the agency would
> ordinarily choose to exercise its public function.

*Id.* at 70-71. The court concluded that the sovereign immunity "doctrine . . . precluded the state court [in the absence of appropriate EPA authorization] . . . from exercising jurisdiction to compel [the EPA employee] to testify . . . ." *Id.*

10. For the reasons stated above and in Exhibit 3, to the extent that the subpoena requests additional documents that the FBI has not yet produced, it must be quashed.

WHEREFORE, the FBI and SA Goffi respectfully request that this Court quash in part the subpoena as set forth above.

DATED: July 21, 2009

DAVID M. GAOUETTE
Acting U.S. Attorney

*/s/ Amy L. Padden*
Amy L. Padden, 28372
Assistant U.S. Attorney

Attorneys for SA Robert Goffi and the FBI

6

EXHIBIT 4

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2009, I served a copy of the foregoing by fax and U.S. Mail to the following:

Counsel for Plaintiff:

Terry Samples
El Paso District Attorney's Office
105 E. Vermigo
Colorado Springs, CO 80903
Fax: (719) 520-6185

Counsel for Defendant:

Shimon Kohn
2 N. Cascade Avenue, Suite 550
Colorado Springs, CO 80903
Fax: (719) 447-1512

Counsel for the FBI:

Robert Goffi
Chief Division Counsel
1961 Stout Street, Room 1823
Denver, CO 80294
Fax: (303) 575-7185



U.S. Attorney's Office

EXHIBIT 4

Exhibit 1

EXHIBIT 4

| District Court, El Paso County, Colorado | |
|---|---|
| 270 South Tejon Street | |
| Colorado Springs, CO 80903 | |
| Plaintiff: The People of the State of Colorado | |
| Defendant: JAMES CISNEROS | |
| Attorney for Defendant: | |
| Shimon Kohn | |
| SHIMON KOHN, P.C. | ▲ COURT USE ONLY ▲ |
| 2 North Cascade Avenue Suite 950 | Case Number: 08CR768 |
| Colorado Springs, CO 80903 | Division 15 |
| (719) 328-9555 | |
| (719) 447-1512 fax | |
| Att. Reg. #31710 | |

## SUBPOENA DUCES TECUM

The People of the State of Colorado:

TO: SPECIAL AGENT ROBERT GOFFI
And/or Custodian of Records
United States Department of Justice
Federal Bureau of Investigation
1961 Stout Street, Room 1823
Denver, Colorado 80294

You are ordered to attend and produce the following documents in Division 15 of the District Court, El Paso County, 270 South Tejon, Colorado Springs, Colorado at 9 a.m. on the 23rd day of July, 2009

Entire confidential informant (CI) file for Robert Rodarte, DOB 3/12/1965. This subpoena requires that above named agent or agency provide any and all reports involving Mr. Rodarte's participation and/or involvement in any investigation either as a suspect or as a confidential informant, to include any compensation or consideration received by Mr. Rodarte.

Any and all information in the possession of the FBI regarding confidential informant DN-5797.

Any and all audio recordings made during the course of the investigation FBI case number 281D-DN-66929, to include all audio recordings between any federal or state agent and Robert Rodarte. Audio tapes are not to be modified, redacted, or altered in any way.

Any and all reports for FBI case number 281D-DN-66929, including any and all internal agency (FBI) memos and notes of any internal meetings.

Any and all Colorado Department of Corrections recorded incoming or outgoing phone calls that involve or relate in any way to FBI case number 281D-DN-66929.

Rough draft of transcript from DVD from hotel room meeting that took place on 2/14/2009.

Provide identification information (manufacturer and model) for any surveillance equipment used by agents in the adjoining hotel room to monitor the activity in Mr. Rodarte's room.

DATED this 29th day of June, 2009.

SHIMON KOHN, P.C.

By: _____
    Shimon Kohn, P.C. #31710

Exhibit 2

EXHIBIT 4

§ 16.12                                                      28 CFR Ch. I (7-1-03 Edition)

activities of the government is "important," enough to be made public.

(3) To determine whether the fee waiver requirement is met, components will consider the following factors:

(i) *The existence and magnitude of a commercial interest:* Whether the requester has a commercial interest that would be furthered by the requested disclosure. Components shall consider any commercial interest of the requester (with reference to the definition of "commercial use" in paragraph (b)(1) of this section), or of any person on whose behalf the requester may be acting, that would be furthered by the requested disclosure. Requesters shall be given an opportunity in the administrative process to provide explanatory information regarding this consideration.

(ii) *The primary interest in disclosure:* Whether any identified commercial interest of the requester is sufficiently large, in comparison with the public interest in disclosure, that disclosure is "primarily in the commercial interest of the requester." A fee waiver or reduction is justified where the public interest standard is satisfied and that public interest is greater in magnitude than that of any identified commercial interest in disclosure. Components ordinarily shall presume that where a news media requester has satisfied the public interest standard, the public interest will be served primarily by disclosure to that requester. Disclosure to data brokers or others who merely compile and market government information for direct economic return shall not be presumed to primarily serve the public interest.

(4) Where only some of the records to be released satisfy the requirements for a waiver of fees, a waiver shall be granted for those records.

(5) Requests for the waiver or reduction of fees should address the factors listed in paragraphs (k)(2) and (3) of this section, insofar as they apply to each request. Components will exercise their discretion to consider the cost-effectiveness of their investment of administrative resources in this decision-making process, however, in deciding to grant waivers or reductions of fees.

[Order No. 2156-98, 63 FR 29593, June 1, 1998; 63 FR 34966, June 28, 1998; 63 FR 36256, July 2, 1998; 63 FR 51401, Sept. 25, 1998]

§ 16.12 Other rights and services.

Nothing in this subpart shall be construed to entitle any person, as of right, to any service or to the disclosure of any record to which such person is not entitled under the FOIA.

Subpart B—Production or Disclosure in Federal and State Proceedings

§ 16.21 Purpose and scope.

SOURCE: Order No. 919-80, 45 FR 83210, Dec. 18, 1980, unless otherwise noted.

(a) This subpart sets forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department as a part of the performance of that person's official duties or because of that person's official status:

(1) In all federal and state proceedings in which the United States is a party; and

(2) In all federal and state proceedings in which the United States is not a party, including any proceedings in which the Department is representing a government employee solely in that employee's individual capacity, when a subpoena, order, or other demand (hereinafter collectively referred to as a "demand") of a court or other authority is issued for such material or information.

(b) For purposes of this subpart, the term *employee of the Department* includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of the Attorney General of the United States, including U.S. Attorneys, U.S. Marshals, U.S. Trustees and members of the staffs of those officials.

Department of Justice                                                  § 16.23

(c) Nothing in this subpart is intended to impede the appropriate disclosure, in the absence of a demand, of information by Department law enforcement agencies to federal, state, local and foreign law enforcement, prosecutive, or regulatory agencies.

(d) This subpart is intended only to provide guidance for the internal operations of the Department of Justice, and is not intended to, and does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States.

§ 16.22 General prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party.

(a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

(b) Whenever a demand is made upon an employee or former employee as described in paragraph (a) of this section, the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow procedures set forth in § 16.24 of this part.

(c) If oral testimony is sought by a demand in any case or matter in which the United States is not a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding, must be furnished to the responsible U.S. Attorney. Any authorization for testimony by a present or former employee of the Department shall be limited to the scope of the demand as summarized in such statement.

(d) When information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its relevance to the proceeding.

§ 16.23 General disclosure authority in Federal and State proceedings in which the United States is a party.

(a) Every attorney in the Department of Justice in charge of any case or matter in which the United States is a party is authorized, after consultation with the "Originating Component" as defined in § 16.24(a) of this part, to reveal and furnish to any person, including an actual or prospective witness, a grand jury, counsel, or a court, either during or preparatory to a proceeding, such testimony, and relevant unclassified material, documents, or information secured by any attorney, or investigator of the Department of Justice, as such attorney shall deem necessary or desirable to the discharge of the attorney's official duties: *Provided*, Such an attorney shall consider, with respect to any disclosure, the factors set forth in § 16.26(a) of this part: *And further provided*, An attorney shall not reveal or furnish any material, documents, testimony or information when, in the attorney's judgment, any of the factors specified in § 16.26(b) exists, without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding, the Director of the Executive Office for United States Trustees (hereinafter referred to as "the EOUST"), or such persons' designees.

(b) An attorney may seek higher level review at any stage of a proceeding, including prior to the issuance of a court order, when the attorney determines that a factor specified in § 16.26(b) exists or foresees that higher level approval will be required before disclosure of the information or testimony in question. Upon referral of a matter under this subsection, the responsible Assistant Attorney General, the Director of EOUST, or their designees shall follow procedures set forth in § 16.24 of this part.

EXHIBIT 4

## § 16.24

(c) If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

### § 16.24 Procedure in the event of a demand where disclosure is not otherwise authorized.

(a) Whenever a matter is referred under § 16.22 of this part to a U.S. Attorney or, under § 16.23 of this part, to an Assistant Attorney General, the Director of the EOUST, or their designees (hereinafter collectively referred to as the "responsible official"), the responsible official shall immediately advise the official in charge of the bureau, division, office, or agency of the Department that was responsible for the collection, assembly, or other preparation of the material demanded or that, at the time the person whose testimony was demanded acquired the information in question, employed such person or of a particular disclosure, or if they agree that such testimony or such a disclosure should not be made, they shall determine if the demand involves information that was collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of this Department or the EOUST. If so, the U.S. attorney or the Assistant Attorney General is charge of the division responsible for such litigation or investigation, may:

(1) Authorize personally or through a Deputy Assistant Attorney General, the demanded testimony or other disclosure of the information if such testimony or other disclosure, in the Assistant or Deputy Assistant Attorney General's judgment or in the judgment of the Director of the EOUST, is consistent with the factors specified in § 16.26(a) of this part, and none of the factors specified in § 16.26(b) of this part exists with respect to the demand; or

(ii) Authorize, personally or by a designee, consultation or negotiation with the party seeking disclosure

### 28 CFR Ch. I (7-1-08 Edition)

mony by a present or former employee of the Department or the production of material from Department files without further authorization from Department officials whenever possible: *Provided*, That, when information is collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of the Department or by the EOUST, the Assistant Attorney General in charge of such division or by the Director of the EOUST may require that the originating component obtain the division's or the EOUST's approval before authorizing a responsible official to disclose such information. Prior to authorizing such testimony or production, however, the responsible official shall, through negotiation and, if necessary, appropriate motions, seek to limit the demand to information, the disclosure of which would not be inconsistent with the considerations specified in § 16.26 of this part.

(d)(1) In a case in which the United States is not a party, if the responsible U.S. attorney and the originating component disagree with respect to the appropriateness of demanded testimony or of a particular disclosure, or if they agree that such testimony or such a disclosure should not be made, they shall determine if the demand involves information that was collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of this Department, the originating component shall notify the Director of the EOUST, who shall notify the Assistant Attorney General responsible for the division responsible for such litigation or investigation, who may:

(e) In a case in which the United States is a party, the Assistant General or the Director of the EOUST responsible for the case or matter, or such designee, are authorized, in consultation with the authorities specified in paragraph (d)(1)(i) through (ii) of this section: *Provided*, That if a demand involves information that was collected, assembled, or prepared originally in connection with litigation or investigation supervised by another part of the Department, the responsible official shall notify the other division the EOUST concerning the demand, the anticipated response. If two

### Department of Justice

negotiations and, if necessary, appropriate motions, to seek to limit the demand to matters, the disclosure of documents, through testimony or documents, considerations specified in § 16.26 of this part, and otherwise to take all appropriate steps to limit the scope or obtain the withdrawal of a demand; or

(iii) If, after all appropriate steps have been taken to limit the scope or obtain the withdrawal of a demand, the Director of the EOUST or the Assistant Attorney General or Deputy Assistant Attorney General does not authorize the demanded testimony demanded, even if a court were to order such disclosure, refer the matter, personally or through a Deputy Assistant Attorney General, for final resolution to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part.

(2) If the demand for testimony or other disclosure in such a case does not involve information that was collected, assembled, or prepared in connection with litigation or an investigation supervised by a division of this Department, the originating component shall decide whether disclosure is appropriate, except that, when especially significant issues are raised, the responsible official may refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part. If the originating component determines that disclosure would not be appropriate and the responsible official does not refer the matter for higher level review, the responsible official will take all appropriate steps to limit the scope or obtain the withdrawal of demand.

### § 16.25 Final action by the Deputy or Associate Attorney General.

(a) Unless otherwise indicated, all matters to be referred under § 16.24 by an Assistant Attorney General, the Director of the EOUST, or such person's designees to the Deputy or Associate Attorney General shall be referred (1) to the Deputy Attorney General, if the matter is referred personally by or through the designee of an Assistant Attorney General who is within the general supervision of the Deputy Attorney General, or (2) to the Associate Attorney General, in all other cases.

(b) All other matters to be referred under § 16.24 to the Deputy or Associate Attorney General shall be referred (1) to the Deputy Attorney or Associate Attorney General, if the originating component is within the supervision of the Deputy Attorney

### § 16.25

litigating units of the Department are unable to resolve a disagreement concerning disclosure, the Assistant Attorneys General in charge of the two divisions in disagreement, or the Director of the EOUST and the appropriate Assistant Attorney General, may refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.26(b) of this part.

(f) In any case or matter in which the responsible official and the originating component agree that it would not be appropriate to authorize testimony or otherwise to disclose the information demanded, even if a court were to so to require, no Department attorney responding to the demand should make any representation that implies that the Department would, in fact, comply with the demand if directed to do so by a court. After taking all appropriate steps in such cases to limit the scope or obtain the withdrawal of a demand, the responsible official shall refer the matter to the Deputy or Associate Attorney General, as indicated in § 16.25 of this part.

(g) In any case or matter in which the Attorney General is personally involved in the claim of privilege, the responsible official may consult with the Attorney General and proceed in accord with the Attorney General's instructions without subsequent review by the Deputy or Associate Attorney General.

EXHIBIT 4

## § 16.26

General or is an independent agency that, for administrative purposes, is within the Department of Justice, or

(2) to the Associate Attorney General, if the originating component is within the supervision of the Associate Attorney General.

(c) Upon referral, the Deputy or Associate Attorney General shall make the final decision and give notice thereof to the responsible official and such other persons as circumstances may warrant.

### § 16.26 Considerations in determining whether production or disclosure should be made pursuant to a demand.

(a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

(2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) Among the demands in response to which disclosure will not be made by any Department official are those the following factors exist:

(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e).

(2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency.

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection.

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

(c) In all cases not involving consid-

## 28 CFR Ch. I (7-1-08 Edition)

through (b)(6) of this section, the Deputy or Associate Attorney General's authority or disclosure unless, in the person's judgment, after considered paragraph (a) of this section, disclosure is unwarranted. The Deputy or Associate Attorney General will not approve disclosure if the circumstances specified in paragraphs (b)(1) through (b)(3) of this section exist. The Deputy or Associate Attorney General will approve disclosure if any of the conditions in paragraphs (b)(4) through (b)(6) of this section exist, unless the Deputy or Associate Attorney General determines that the administration of justice requires disclosure. In this regard, if disclosure is necessary to pursue a civil or criminal prosecution or affirmative relief, such as an injunction, consideration shall be given to:

(1) The seriousness of the violation or crime involved,

(2) The past history of the violator or record of the violator or accused,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

(d) Assistant Attorneys General, U.S. Attorneys, the Director of the BOP, U.S. Trustees, and their designees, authorized to issue supervisory policies and to adopt supervisory practices, consistent with this subpart, in order to help foster consistent application of the foregoing standards and the requirements of this subpart.

### § 16.27 Procedure in the event a Department decision concerning a demand is not made prior to the time a response to the demand is required.

If response to a demand is required before the instructions from the appropriate Department official are received, the responsible official or other Department attorney designated for the purpose shall appear and furnish the court or other authority with a copy of the regulations contained in this subpart and inform the court or other authority that the demand has been or is being, as the case may be, referred for the prompt consideration of the appropriate Department official

## Department of Justice

and shall respectfully request the court or authority to stay the demand pending receipt of the requested instructions.

### § 16.28 Procedure in the event of an adverse ruling.

If the court or other authority declines to stay the effect of the demand in response to a request made in accordance with § 16.27 of this chapter pending receipt of instructions, or if the court or other authority rules that the demand must be complied with irrespective of instructions rendered in accordance with §§ 16.24 and 16.25 of this part not to produce the material or disclose the information sought, the employee or former employee upon whom the demand has been made shall, if so directed by the responsible Department official, respectfully decline to comply with the demand. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

### § 16.29 Delegation by Assistant Attorneys General.

With respect to any function that this subpart permits the designee of an Assistant Attorney General to perform, Assistant Attorneys General are authorized to delegate their authority, in any case or matter, to subordinate division officials or U.S. attorneys, as appropriate.

APPENDIX TO SUBPART B OF PART 16—
REDELEGATION OF AUTHORITY TO THE DEPUTY ASSISTANT ATTORNEY GENERAL FOR LITIGATION, ANTITRUST DIVISION, TO AUTHORIZE PRODUCTION OR DISCLOSURE OF MATERIAL OR INFORMATION

1. By virtue of the authority vested in me 28 CFR 16.28(b)(1) the authority delegated to me by that section to authorize the production of material and disclosure of information described in 28 CFR 16.21(a) is hereby delegated to the Deputy Assistant Attorney General for Litigation, Antitrust Division.

2. This directive shall become effective on the date of its publication in the FEDERAL REGISTER.

Order No. 960–81, 46 FR 52356, Oct. 27, 1981]

## § 16.32

SOURCE: Order No. 556–73, 38 FR 32806, Nov. 28, 1973, unless otherwise noted.

### Subpart C—Production of FBI Identification Records in Response to Written Requests by Subjects Thereof

### § 16.30 Purpose and scope.

This subpart contains the regulations of the Federal Bureau of Investigation (FBI) concerning procedures to be followed when the subject of an identification record requests production of that record, change, correction, or updating of that record.

[Order No. 2258–99, 64 FR 52226, Sept. 28, 1999]

### § 16.31 Definition of identification record.

An FBI identification record, often referred to as a "rap sheet," is a listing of certain information taken from fingerprint submissions retained by the FBI in connection with arrests and, in some instances, includes information taken from fingerprints submitted in connection with federal employment, naturalization, or military service. The identification record includes the name of the agency or institution that submitted the fingerprints to the FBI. If the fingerprints concern a criminal offense, the identification record includes the date of arrest or the date the individual was received by the agency submitting the fingerprints, the arrest charge, and the disposition of the arrest if known to the FBI. All arrest data included in an identification record are obtained from fingerprint submissions, dispositions reports, and other reports submitted by agencies having criminal justice responsibilities. Therefore, the FBI Criminal Justice Information Services Division is not the source of the arrest data reflected on an identification record.

[Order No. 2258–99, 64 FR 52226, Sept. 28, 1999]

### § 16.32 Procedure to obtain an identification record.

The subject of an identification record may obtain a copy thereof by submitting a written request via the U.S. mails directly to the FBI, Criminal Justice Information Services...

EXHIBIT 4

Exhibit 3

EXHIBIT 4



**U.S. Department of Justice**

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

1961 Stout Street
Room 1823
Denver CO  80294
July 16, 2009

Shimon Kohn, Esq.
2 North Cascade Avenue,
Suite 550
Colorado Springs, CO 80903

Re: *State of Colorado v. James Cisneros*, 05-CR-1768
    District Court, El Paso County

Dear Mr Kohn:

This letter is being submitted by the Federal Bureau of Investigation (FBI) in connection with your subpoena *duces tecum* issued to the FBI in the above-referenced matter. The subpoena essentially seeks disclosure of the following: FBI confidential informant files for Robert Rodarte (identified in FBI reporting as "DN-5797"); any reports and audio recordings maintained in an FBI investigative file designated 281D-DN-66929; any Colorado Department of Corrections recordings of incoming or outgoing telephone calls that relate to the investigation designated 281D-DN-66929; and a "rough draft" transcript from electronic surveillance conducted by the FBI on February 14, 2009, in connection with the investigation designated 281D-DN-66929, as well as identification information (i.e., make and model) for the specific electronic surveillance equipment utilized by the FBI on that date.

It is the position of the FBI that this subpoena, issued in a proceeding where the United States is not a party, is governed by federal regulations set forth at 28 C.F.R. § 16.21 et seq. These regulations provide the FBI with the opportunity to protect information from unwarranted disclosure. The regulations list specific types of demands in response to which disclosure will not be made by the FBI. See 28 C.F.R. § 16.26(b)(1)-(6). For the reasons expressed by the Supreme Court in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the FBI may not be compelled to produce any materials in this state court proceeding nor held in contempt for withholding any materials.

EXHIBIT 4

In accordance with these regulations, and as responsive to the subpoena, the FBI is submitting with this letter the following:

-) All investigative reports from 281D-DN-66929 that reference James Cisneros;

-) Report dated 01/26/2009 that documents information from DN-5797 (Robert Rodarte) regarding James Cisneros;

-) Report of FBI financial authorizations for DN-5797 (Robert Rodarte);

-) Incomplete rough draft transcript of audio electronic surveillance conducted by the FBI;

-) Audio recordings obtained by the FBI from the Colorado Department of Corrections; and

-) All audio/video recordings of electronic surveillance conducted by the FBI in 281D-DN-66929.

It is the FBI's understanding that some of these investigative reports may have already been produced to you during the ongoing discovery process in this matter. Because the documents enclosed with this letter are, in the FBI's view, the only responsive documents producible in this state court proceeding in accordance with the above-cited regulations, they are being provided to you in order to comply with the subpoena.

Apart from the reports submitted here, the remainder of the documents in 281D-DN-66929 and Robert Rodarte's informant file concern matters and ongoing investigations unrelated to the charges against Mr. Cisneros. Release of these records in this state court proceeding is prohibited because such disclosure could interfere with pending operations. See 28 C.F.R. § 16.26(b)(4) and (5). With respect to the make and model of surveillance equipment, the FBI views the electronic surveillance conducted on 02/14/2009 as a sensitive investigative technique. Disclosure of the make and/or model of the equipment utilized could impair the future effectiveness of such technique. See 28 C.F.R § 16.26(b)(5).

This letter and the accompanying enclosures are viewed by the FBI as a complete response to your subpoena. If you have any questions, or wish to raise any challenges, regarding the positions presented by the FBI with respect to the subpoena, please contact the undersigned at (303) 575-7184 by close of business on Monday July 20, 2009. Given the return date on the subpoena, July 23, 2009, this will allow the FBI sufficient time

2

EXHIBIT 4

to determine whether some other procedure is required here (such as the filing of an objection to the subpoena or a motion to quash).

Sincerely,

Robert J. Goffi
Chief Division Counsel
Federal Bureau of Investigation
Denver Division

cc: AUSA Amy Padden, Esq.
United States Attorney's Office
District of Colorado

Terry Sample, Esq. (w/enclosures)

EXHIBIT 4