```
 1    DISTRICT COURT
      EL PASO COUNTY, COLORADO
 2    270 South Tejon
      Colorado Springs, CO 80903
 3

 4    PEOPLE OF THE STATE OF COLORADO

 5    vs.

 6
      JAMES CISNEROS
 7    Defendant:

 8                                 * FOR COURT USE ONLY *

 9
                                   Case No. 09 CR 768
10
                                   Division 15
11

12
      APPEARANCES:
13

14    MS. TERRY SAMPLE, Reg. No. 33919
      For the People
15
      MS. AMY PADDEN, U.S. Attorney's Office, 28372
16    MR. ROBERT GOFFI, FBI, Reg. No. 15012

17
      MR. SHIMON KOHN, Reg. No. 31710
18    For the Defendant

19

20                    REPORTER'S TRANSCRIPT

21

22         The following proceedings were held July 23, 2009,

23    before the HONORABLE GREGORY WERNER, Judge of the District

24    Court.

25
```

EXHIBIT 5

1          THE COURT:  09 CR 768, James Cisneros.  We are here

2     today for, it is looking like, a return on a subpoena duces

3     tecum.  Mr. Kohn, I did get, just yesterday I got it faxed, I

4     guess, the motion to quash from the Justice Department

5          MS. SAMPLE:  Judge, for your information, I do have

6     Amy Padden here and Bob Goffi.

7          MR. KOHN:  Before we go any further, I apologize for

8     interrupting, does the Court have a record of me waiving my

9     client's appearance for this?

10          THE COURT:  I thought I did.

11          MR. KOHN:  It wouldn't be unusual for me to do that.

12     I don't have a record in my files.  I am just concerned.

13          THE COURT:  I think probably what happened here, I am

14     looking at the last minute order, and it does not reflect in

15     the last minute order that you waived.  But I think probably

16     what would have occurred here is that you called Ms. Jones for

17     a return date, and she gave you this, and so it would not be a

18     bond return date.  I am not considering this as a bond return

19     date.

20          If you want to waive his appearance, that's fine.

21          MR. KOHN:  He is in custody, judge.

22          THE COURT:  That's right.  He is still in custody on

23     the parole hold.

24          MR. KOHN:  I certainly don't mean to complicate

25     things.  This is a critical stage.  This may be the most

EXHIBIT 5

1   critical motions hearing we have in front of the Court on this

2   case.  I am not comfortable waiving his appearance, if I

3   haven't already received his permission to do so.  I am

4   wondering maybe I can track down the sheriff's office right

5   here on this floor and see how long it would take them to bring

6   him over here.

7           THE COURT:  We could get him here this afternoon at

8   1:30 for sure.

9           MR. KOHN:  I have a hearing at 2:00 o'clock in

10  Division 16, but I am sure I can explain to them that I will be

11  running late.

12          THE COURT:  Or everybody can be succinct and we can

13  get it done in a half hour.

14          MR. KOHN:  We could definitely shoot for that, judge.

15          MS. SAMPLE:  Judge, if I could ask Ms. Padden.

16          Ms. Padden and Mr. Goffi would be available, judge.

17          THE COURT:  Let's do it at 1:30 then.

18          MR. KOHN:  Thank you, judge.  I apologize.

19          THE COURT:  That's all right.  I thought this was

20  going to take some time.

21          (Brief recess.)

22          THE COURT:  Court will call 09 CR 768, People vs.

23  Cisneros.  And we are here on a number of things.  There are a

24  number of things pending.  Let's deal with the easiest first.

25  There is a motion for separate trials and Counts 2 and 3 which

EXHIBIT 5

1    are possession of a weapon by a previous offender, and I will

2    grant those, unless there is an objection by the People or

3    argument by the People as to why it should be denied.  I

4    believe we are here on the SDT return today.

5            MR. KOHN:  I agree, judge.

6            THE COURT:  Let me take a look at my -- you may be

7    right.  I may have gotten ahead of myself here.  My mistake.

8    You would be right.  I have reviewed the motion to quash, and

9    we have a representative from the Justice Department here.

10           MS. PADDEN:  Good afternoon.  Bob Goffi and Amy

11   Padden from the U.S. Attorney's Office, P-a-d-d-e-n.

12           THE COURT:  I have reviewed the motion to quash the

13   subpoena that was filed by the U.S. Attorney's Office.  I had a

14   couple of questions.  There were a number of things that were

15   requested that I can't make heads or tails of.

16           It says, "All information in the possession of FBI

17   regarding confidential informant DN 5797."  Is that allegedly

18   Mr. Rodarte?

19           MR. KOHN:  It is, your Honor.  That's Mr. Rodarte.

20           THE COURT:  Then there are, "All audio recordings

21   made during the course of the investigation of FBI case number

22   281 DDN 66929.  Is that this case or is it something else?

23           MR. KOHN:  That is the case where Mr. Cisneros and

24   the Salazars are investigated, your Honor.

25           MS. SAMPLE:  Judge, that's the case number for the

EXHIBIT 5

1    confidential informant file for Robert Rodarte.  It requires

2    the above agent or agency to provide any and all reports

3    involving Mr. Rodarte's participation and/or involvement in any

4    investigation either as a suspect or as a confidential

5    informant, to include any compensation or consideration

6    received by Mr. Rodarte."

7          I would tell you, I think that you are entitled to

8    know what compensation or consideration any law enforcement

9    agency may have given to Mr. Rodarte.  That I think is

10   relevant.  The remainder, however, any information, for

11   instance, and I have no idea what this is, I am just making

12   this up, for instance, Mr. Rodarte may have worked as a

13   confidential informant in some other case where he obtained

14   some information regarding somebody else that has something to

15   do with some other charge against someone else.

16          Why would that be discoverable here?

17          MR. KOHN:  We have endorsed the defense of

18   entrapment.  We also endorsed the defense of choice of evils,

19   judge, in addition to general denial.  This goes directly to

20   the heart of our defense of entrapment and choice of evils.

21   What we have is the government and agent of the government Mr.

22   Rodarte going in, pretending he is going to go through

23   everything, judge.  The Court sat through, I am sure, more than

24   one lengthy preliminary hearing on this.

25          THE COURT:  More than one.

EXHIBIT 5

1        MR. KOHN:  What the government is doing, through an

2  agent, is going into a group of people in this situation, I

3  imagine in others as well, he represents himself as somebody

4  who is speaking for the higher ups in a gang.  I don't think

5  that the Court needs expert witnesses to testify as to what

6  happens if you don't follow through on what the higher ups in a

7  gang are requesting.  And at that point he is the one who

8  actually commits the crime.  He is the one who was actually

9  attempting to set up a drug distribution network.

10        Now that after the SDT is released or some of the

11  information was released, I was shocked to find out the

12  un-Godly amount of money that he is receiving.  We are talking

13  about advances of $14,000 before the dates where any

14  investigations are done in a total authorization of $100,000

15  for him to provide information.  That gives him a truckload of

16  incentive to entrap, to threaten, to do whatever is necessary

17  to make his handlers in the government happy.

18        THE COURT:  Based on the one sheet of information

19  that you were provided, I think, by Mr. Goffi, that would

20  indicate that money was paid in cases other than this one.

21        MR. KOHN:  No, judge.  I don't know what it was paid

22  in.  It just indicates November 5, 2008, $7,000 paid to him.

23  And then another payment of November 5, 2008, $7,000 paid to

24  him.

25        THE COURT:  Here is what we are going to do, I am

EXHIBIT 5

1    going to require that the FBI or the Justice Department define

2    what he was paid in this case.  By that you will know what he

3    has been paid in some other cases.  You will be able to -- I

4    don't even know if you are going to be able to get in this or

5    exactly how you are going to get this in if he doesn't take the

6    stand necessarily.  I suppose you can cross-examine law

7    enforcement about it.

8         What you would be able to say is that he has been

9    paid in other cases a hundred thousand dollars.  You paid him

10   14 in this.  The reason why you know it's a hundred thousand

11   dollars in other cases is they are going to tell you how much

12   it was in this case.  They are not going to have to separate

13   out what each other case was.  I don't think that that's

14   appropriate.  I think that you still obtain the benefit that

15   you are seeking, which is essentially this was a guy that was

16   hired by the government to go out and set these people up and

17   that's what he did.

18        I also am concerned that if we start getting into

19   questioning of someone on the witness stand, and let's assume

20   for an easy case to resolve is that it's an investigation

21   that's already been concluded.  The questioning that would

22   bother me and I think would not be permitted would be, "Well,

23   isn't it true Mr. Rodarte worked in some other case?  That case

24   involved him doing X, Y and Z.  And for that he got paid X

25   amount of dollars."  Then we are ending up having a trial

EXHIBIT 5

1    within a trial within a trial.  I don't think that that's

2    appropriate.  I do think it's appropriate for you to be able to

3    know what he got paid in this case and what he has received

4    overall.  That would allow you to say he got all this money.

5    He had an incentive to set these people up.  He wanted to keep

6    his government handlers happy because look at all the money he

7    got before this case and so that's what he was doing.

8              MR. KOHN:  If I may respond.  We already have all of

9    that based on this information.  We are certainly requesting

10   additional information.  I think that we are entitled to have

11   the agreement that's signed, whether it's called a contract or

12   agreement of the defendant.  We are entitled to have that to

13   see what the contractual agreement was between the Federal

14   government and Mr. Rodarte.

15             THE COURT:  That's a different matter.

16             MR. KOHN:  I understand.  Getting back to the issue

17   of the different investigations that he had provided

18   information in.  What we are trying to do, judge, is more of a

19   reverse 404(b) argument.  We are trying to show that Mr.

20   Rodarte, with the assistance of the Federal government, has a

21   history.  If he does -- we don't know if he does or not -- has

22   a history of receiving large amounts of money.  And based on

23   that, he goes in and does what he needs to do in order to earn

24   that large amount of money so there is another big pot of money

25   waiting for him at the end of that particular investigation.

EXHIBIT 5

1    That's why I believe we are entitled to all of that

2    information.  I think that we should have it as a right of

3    confrontation, a right of due process, both under the state and

4    Federal Constitution, as well as Rule 16 in the statutes for

5    the Rules of Criminal Procedure in Colorado.

6         THE COURT:  You made your argument.  I have made my

7    record.  I think we get into collateral matters.  I think that

8    it is important for you to know what he got paid overall and

9    what he got paid in this case.

10        Let me ask, first of all, Mr. Goffi, can that be

11   separated out that way?

12        MR. GOFFI:  Yes.  We could do that.

13        THE COURT:  I will order that to be done.  I am not

14   going to order any other -- or any documentation regarding any

15   other investigation he was involved in to be disclosed.  I

16   don't think that's appropriate in this particular case.

17        In addition, I am concerned about this matter

18   dissolving into trials of collateral issues.  There is some

19   concern about hampering conceivably ongoing investigations.

20   Although I admit that is small at this point in time, seeing

21   how Mr. Rodarte most likely is not -- I know he is not working

22   on anything on the outside.  He is not on the outside.  And so

23   I can't see that turning over documentation in other files,

24   aside from what I have indicated, is going to help with that

25   issue.

EXHIBIT 5

14

1              Let's turn then to the second issue of, "Any and all

2      information in the possession of FBI regarding confidential

3      informant DN 5797," that's Mr. Rodarte, right?

4              MR. KOHN:  Correct.

5              THE COURT:  Again, it sounds like I may have already

6      addressed this.  But I want to make sure.  So the FBI has a

7      file about Mr. Rodarte that contains information on all of his

8      involvement in all sorts of things, is that fair?

9              MR. GOFFI:  Yes.

10             THE COURT:  What you have done is turned over

11     everything that has to deal with his involvement in this

12     particular action affecting Mr. Cisneros and the other

13     co-defendants?

14             MR. GOFFI:  Well, we are talking about his informant

15     file.  We have turned over everything out of Mr. Rodarte's

16     informant file that relates to reporting he gave us on Mr.

17     Cisneros.

18             THE COURT:  I think I have already covered that.

19     What else is in his file, aside from what was on Mr. Cisneros?

20     I mean, in general terms, is it other investigations he worked

21     on?

22             MR. GOFFI:  Yes.

23             THE COURT:  I think I have answered the second

24     paragraph.  It sounds as though that has been turned over.  I

25     am not going to require production of the entire file, again,

EXHIBIT 5

1   for the reasons that I stated before.  And Mr. Kohn's objection

2   to this part I think was also stated previously.

3           MR. KOHN:  Judge, it was just a couple other issues

4   as far as the confidential informant file.  We are entitled to

5   have information as to whether there was any consideration with

6   any criminal cases.  For example, was he arrested and then at

7   that point he started working for the government?  There was

8   consideration regarding criminal cases as well.

9           THE COURT:  Consideration that Rodarte got?

10          MR. KOHN:  Correct.  I am sorry, judge, I didn't

11  state that very well.  At this point I think it might be a good

12  time for me to get back to the issue of the contract that he

13  has working with the Federal government.  I think it's clear we

14  are entitled to that.  I think we are entitled to that in order

15  to show the motivation and what the level of motivation is and

16  the purpose of his communication with what the FBI calls a

17  Salazar drug organization.

18          THE COURT:  Let's deal with those issues separately.

19  Has information been given or been released to the prosecution

20  so that it can be released to defense regarding any -- I am

21  going to refer to it as deals -- that Mr. Rodarte would have

22  gotten from or any consideration that Mr. Rodarte would have

23  gotten from the government for pending criminal cases that he

24  has?

25          MS. SAMPLE:  I am not aware of any of that

EXHIBIT 5

1    information, judge.  The information I have of any

2    consideration is the financial that I received at the same time

3    as Mr. Kohn.

4              THE COURT:  It sounds to me like what he is looking

5    for, aside from monetary consideration is, "We will cut down

6    your years or have some charges dismissed or something," has

7    that been released?

8              MR. GOFFI:  Based on my review of the file, and I

9    wasn't the agent that handled that informant, there is nothing

10   in the file to indicate there is any consideration of that

11   sort.

12             THE COURT:  You have reviewed the file?

13             MR. GOFFI:  Yes.

14             MR. KOHN:  Can we have an order of the Court?  I

15   understand that there is no order that the Court has

16   jurisdiction over Mr. Goffi.  Perhaps a request of the People

17   that Mr. Goffi make efforts to determine whether there was any

18   type of consideration as far as criminal cases as well as

19   financial?

20             THE COURT:  He already reviewed the file.  Tell me

21   what other efforts you have in mind.

22             MR. KOHN:  Talking to the case agent to see if the

23   case agent knows of something.

24             MR. GOFFI:  I will speak with the agent that handled

25   Rodarte as the informant and find out the circumstances he came

EXHIBIT 5

1   to us as an informant.

2           THE COURT:  All right.  Then let me ask about this

3   because Mr. Kohn keeps referring to a contract with the Federal

4   government.

5           Does Mr. Rodarte have a contract with the Federal

6   government?

7           MR. GOFFI:  No.  There was no service agreement.

8           THE COURT:  I would have been surprised if there

9   would have been.  This is sort of a kind of, "You do this and

10  we will pay you so much amount of money," that kind of stuff.

11  That's all been disclosed?

12          MR. GOFFI:  Yes.

13          THE COURT:  As opposed to, "We are hiring you to go

14  into five different criminal organizations at the rate of $80

15  an hour," something like that, nothing like that?

16          MR. KOHN:  Hold on a second.  There has to be some

17  documentation.  And I don't know the form number or the terms

18  used in the FBI or the Department of Justice.  There has to be

19  some documentation that outlines what the government expects of

20  Mr. Rodarte, what Mr. Rodarte can and can't do, and how much

21  Mr. Rodarte is going to be compensated.  They didn't sit in a

22  room one day and say, "Mr. Rodarte, we are going to write you a

23  check for $14,000."

24          THE COURT:  Now, wait a minute.  You heard testimony

25  and I have heard it several times, you are looking for a

EXHIBIT 5

1  document.  I don't necessarily know that there is a document.

2  Mr. Goffi says that there isn't.  He says he is going to check

3  with the agent.  Everything that the agent has testified said,

4  "This is what we talked about.  This is what we agreed to."

5  That doesn't necessarily mean there is a written document.  If

6  there is a principal document about he is supposed to do

7  certain things, I will order that to be produced.  I would be

8  surprised if there is one.  I think it's sort of, as we run

9  into in all of the cases, that somebody is trying to get a

10  confidential informant to do something, and they are making an

11  offer to them and saying, "You do this, and I will do this."  I

12  am not sure that that necessarily means that it has to be in

13  writing.

14        MR. KOHN:  I will just tell the Court, based on my

15  experience with EPSO and CSPD, which I understand is not the

16  Federal government, the task forces that originate out of those

17  two organizations, they have a written agreement which at least

18  describes what, even in general terms, what the purpose of it

19  is.  Then it describes the consideration as to what they are

20  going to get.  A lot of times the District Attorney is involved

21  in that, as far as what the consideration is going to be.  I

22  haven't seen one for a financial consideration.

23        But certainly for cases, for working for

24  consideration on the case, then it goes into sections that

25  include understanding the responsibilities, what they can and

EXHIBIT 5

1          MR. KOHN:  I do.  All of our requests are being made

2    pursuant to the Sixth Amendment Due Process Laws relating to

3    confrontation, Rule 16, and all of those in both the state and

4    Federal Constitution.  We have two defenses:  Entrapment and

5    choice of evils defense that require us to investigate and find

6    out certain information.  For example, has this happened

7    before?  Does Mr. Rodarte do this as a professional?  Is this

8    how he makes his living?  How often has he done this?

9          And also as part of the entrapment defense, how is it

10   that this organization, this alleged criminal organization, the

11   Salazar organization, became the target.  Why were they the

12   target and how much was the Federal government willing to pay

13   or provide to Mr. Rodarte, consideration of any kind, in order

14   to gather information and make sure it is a prosecutable case

15   on members of the Salazar criminal organization.

16          THE COURT:  All right.  For purposes of the record, I

17   disagree.  I don't know and I don't believe that the issue, has

18   this happened before and how or why did the Salazars become the

19   target of this investigation, I don't believe is relevant to

20   either one of those.  The question of entrapment is going to be

21   on this specific day, on this specific occasion, with this

22   specific offense were they duped into it?  Were they goaded

23   into it?  Were they just brought along for the ride?  No pun

24   intended.  That's really what it has to deal with.

25          Again, the Court is concerned about getting into too

EXHIBIT 5

1    many collateral matters of, well, let's talk about the case

2    that happened a year before with Mr. Rodarte where he set up

3    some other organization, this is what he did.  Even if he did

4    exactly the same thing in that case, I don't believe it would

5    be relevant or admissible in this case.

6              In addition, with respect to the how or why the

7    Salazars became the target, again, the only issue that we are

8    dealing with here, this isn't a RICO claim.  This is a claim

9    for conspiracy to commit murder.  How or why they became the

10   target of any investigation by any law enforcement agency I

11   don't believe is relevant.  The only thing that is relevant is

12   what occurred on that particular day and what Mr. Rodarte did

13   to set them up.  You made your record.  I have made mine.

14             The next issue is a rough draft of a transcript from

15   a DVD in the hotel.  Is that the DVD that we saw that you are

16   looking for?

17             MR. KOHN:  Correct, judge.  I did receive that.

18             THE COURT:  I was going to say, if there is a rough

19   draft of the transcript, that needs to be produced.  That is

20   almost unintelligible in spots.

21             "Provide identification information for any

22   surveillance equipment used by agents in the adjoining hotel

23   room to monitor the activity of Mr. Rodarte's room."  What you

24   are asking for is essentially the equipment that TFO Richardson

25   was using in the room next door?

EXHIBIT 5

1    think Mr. Kohn may have a point.  I am going to have to think

2    about that one because it could be that you could also

3    establish that point by the evidence that we have, which is

4    they didn't.  They didn't monitor it.

5            MR. KOHN:  That's the question, judge.  I don't

6    recall the feedback issue.  Certainly I am sure that that's

7    what he said.  I was focusing on other issues.  I didn't view

8    that part of the transcript.

9            I will tell the Court that in discovery a report

10   dated in February 23, 2009, by TFO Storey, S-t-o-r-e-y, TFO

11   Richardson and Special Agent Schirmer, S-c-h-i-r-m-e-r in the

12   discovery it states, "An audio review of the events and

13   conferences held in room 520 could not be reviewed live due to

14   the lack of speakers or headphones attached to the audio

15   system."  There is two things I am looking for, judge.

16           I am looking for, is there a built-in speaker system?

17   I am sorry, I can't take the government's word for it.  I have

18   the duty to investigate.  Is there a built-in speaker system?

19   And if there isn't a built-in speaker system, is it just your

20   standard plug-in like an IPOD type of speaker?  I lived right

21   next to that hotel.  There is a Walgreens less than a

22   three-minute drive from there.  There is a Safeway a minute

23   from there.  This went on for four hours.

24           If there is information that these are super special

25   secret FBI headphones that you can't buy at Safeway or the

EXHIBIT 5

1   Walgreens, that's the information I am looking for.  Otherwise,

2   I think I am entitled to have that information.

3          MS. SAMPLE:  Judge, I think that he could ask those

4   specific questions of TFO Richardson, Storey or Special Agent

5   Schirmer when they are on the stand.

6          THE COURT:  Except he is stuck with whatever answer

7   he gets which he is -- that's not right.  I don't believe that

8   passes Constitutional muster either.  That's sort of like

9   saying, well, you ask him whatever you want, you are stuck with

10  whatever answer you get.  If you don't like it, it's too bad.

11  I don't think the law is in that fashion.  I have to tell you

12  that I am a little perplexed, and I asked some other judges

13  about this, they were unaware of any law on point.  I did

14  review the Federal regulation somewhere that's in here, 28 CFR

15  16.26,(b)5 which prohibits or it says, "In deciding whether to

16  make disclosures pursuant to a demand, the department

17  officials" -- this is referring to the Department of Justice --

18  "the department officials and attorneys should consider whether

19  disclosure would reveal investigatory records compiled for law

20  enforcement purposes and would interfere with enforcement

21  proceedings or disclose investigative techniques and

22  procedures.  The effectiveness of which would thereby be

23  impaired."

24          As I understand the argument from the motion to quash

25  that was submitted by the Department of Justice, and from Ms.

EXHIBIT 5

1    Padden as well, the argument essentially is that this

2    disclosure, this information, may impede further investigations

3    because it may lead to essentially defeat of the surveillance

4    method, is that correct?

5              MS. PADDEN:  That's correct, your Honor.

6              THE COURT:  I have got to tell you, I am not sure

7    that that trumps the Constitution.  I am not sure it doesn't.

8    I don't know.  That part I am going to have to take under

9    advisement.

10             Let me ask Ms. Padden because probably you have a

11   better answer than anybody else, I understand Code of Federal

12   Regulations, are you aware of any recorded appellate cases on

13   that issue?

14             MS. PADDEN:  Your Honor, I am not.  I did not do that

15   thorough of a search.  I can do that and file a supplement with

16   the Court.

17             THE COURT:  Yes.  I would like that within ten days.

18   Mr. Kohn, I am going to give you the same opportunity.  I took

19   a brief look.  I couldn't find anything.  If you can find

20   something that says that, yeah, they have a recording technique

21   that they have to give up and submit that to me within ten

22   days, I am happy to take a look at it.  I don't know the

23   answer.

24             MR. KOHN:  Judge, I think that Davis vs. Alaska, 415

25   U.S. 308, I think it's on point.  Clearly the facts are

EXHIBIT 5