| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY, COLORADO<br>270 S. Tejon Street<br>Colorado Springs, Colorado 80903 | |
| THE PEOPLE OF THE STATE OF COLORADO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES CISNEROS,<br><br>Defendant. | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Special Agent Robert Goffi and the FBI:<br>DAVID M. GAOUETTE<br>U.S. Attorney<br>AMY L. PADDEN, 28372*<br>Assistant U.S. Attorney<br>1225 Seventeenth Street, Suite 700<br>Denver, CO 80202<br>(303) 454-0100<br>Fax: (303) 454-0408<br><br>*Counsel of Record | Case No.: 2009CR768<br>Division: 15 |
| **MOTION FOR RECONSIDERATION AND TO STAY** | |

COMES NOW Robert Goffi, Special Agent, and the Federal Bureau of Investigation ("FBI"), United States Department of Justice, through the United States Attorney for the District of Colorado, and submits this Motion for Reconsideration and Motion to Stay. For the reasons set forth in its Motion and below, the FBI respectfully requests that the Court reconsider its oral ruling rendered on November 24, 2009, and stay any dissemination of the FBI's Confidential Informant file about Mr. Rodarte, which was produced to the Court for the limited purpose of conducting an *in camera* review, until this motion is resolved and until the FBI has the opportunity to seek additional relief in federal court as warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

As this Court is aware, the FBI has been served with a number of subpoenas by the various Defendants in this case. In turn, this Court has held numerous hearings regarding whether Defendants are entitled to portions of the FBI's confidential informant file for Robert Rodarte. The Court has consistently held that Defendants are not entitled to the

EXHIBIT 11

entirety of the file. The FBI has already released all portions of the file that relate to the incident at issue in this case and all portions that the Court has ordered released.

The FBI is not a party to these proceedings. Nonetheless, the FBI has cooperated throughout these proceedings in an effort to ensure that Defendants receive the evidence to which they are constitutionally entitled, while, at the same time, protecting information (i) that is subject to privilege or (ii) the disclosure of which would jeopardize on-going and active investigations or may endanger the lives of other confidential informants or government agents. In fact, on at least one occasion, this Court ordered that the FBI was not required to disclose a document that the FBI had already disclosed—*i.e.*, the FBI's disclosure <u>exceeded</u> that which the Court believed was warranted. In the spirit of cooperation and in an effort to expedite the resolution of this case, the FBI submitted to the Court the entirety of Mr. Rodarte's confidential informant file for the limited purpose of allowing the Court to conduct an *in camera* review. Both before and after reviewing that file, the Court has repeatedly ordered that the entirety of Mr. Rodarte's confidential informant file would <u>not</u> be disclosed in this case.

The Court seems to be under the impression that Mr. Rodarte either had access to this file or was privy to all of its contents. This is not so. The file is the FBI's file. It is not a file maintained by Mr. Rodarte. The file contains information of which Mr. Rodarte has no knowledge. (*See* Ex. 1 ¶ 6 (decl. of S. Smith).) He is not privy to the content of the file. (*Id.*)

The FBI obviously cannot discuss in detail the specific contents of this file in a public pleading. However, as the attached declaration establishes, the file refers to other investigations. (*See* Ex. 1 ¶¶ 7, 8 (decl. of S. Smith).) It identifies by name the subject of an active investigation being conducted by another FBI office, who likely is unaware that he or she is the subject of a FBI investigation, and a symbol number for a source working on that investigation. (*Id.* ¶ 7.) The release of this information would frustrate the FBI's ability to continue with this investigation. (*Id.*)

The file also discloses information about the FBI's recruitment, evaluation, use, and monitoring of informants, the disclosure of which would hamper the FBI's ability to recruit and use informants in the future. (*Id.* ¶ 6.) It also contains sensitive information regarding the payment of confidential informants. Here again, release of this information would hamper the FBI's ability to recruit and use informants. (*Id.*)

Despite the Court's repeated rulings during numerous hearings held on this issue, at the hearing on November 24, 2009, without notice, this Court changed course and ordered that it would release the nearly all of the confidential informant file to <u>all</u> Defendants in this case and the related cases. (11/24/09 Tr. at 6:11-13 (Ex. 2 hereto).) The Court found that the "records contain information known to or supplied by Mr. Rodarte." (*Id.* at 3:15-16.) It also

2

EXHIBIT 11

found that at least some of the investigations had been closed and one of the targets had been killed. *Id.* The Court found that because Mr. Rodarte was a confidential informant of the FBI, the FBI "cannot claim privilege or confidentiality with respect to the operations in which they placed Mr. Rodarte." (*Id.* at 5:7-9.) The Court found that "the Constitutional considerations for Mr. Rodarte outweigh the government's interest in secrecy." (*Id.* at 3:23-25.) The Court then stated that they "<u>may</u> be relevant also to the other defendants' <u>potential</u> defenses in this case." (*Id.* (emphasis added).) The Court said it could not "guess" whether Mr. Rodarte had communicated to the other Defendants any of the facts involving Mr. Rodarte's confidential informant activities. (*Id.* at 4:6-10.)

The Court ordered that the documents would be released to the District Attorney's office, who in turn would deliver them to defense counsel as discovery. The Court ordered that defense counsel would be able to show these documents to their clients, although a protective order would issue that would preclude Defendants themselves from keeping copies of the documents. (*Id.*) The Court ordered that this release would include all the information in the file, with the exceptions of documents relating to drug smuggling into a prison and the activities of a Sheriff's Department in Colorado, without any redactions. The Court did not permit any argument on this issue. The Court indicated that it would proceed in this manner on noon on December 7, 2009, unless the government undertook other actions by that date.

For the reasons that the Court has previously ordered that the entire file would not be disclosed, as well as the reasons below, the FBI moves the Court to reconsider its most recent ruling that it would release the entire CI file to all Defendants in this case. The Court's most recent ruling on this issue violates sovereign immunity and is contrary to the law regarding the privilege that exists for confidential informants and law enforcement techniques. As explained below, the disclosure of this material, even subject to a protective order, would cause irreparable harm and should be reconsidered.

## LAW AND ARGUMENT

As explained in the motion to quash filed in Case Number 09cr768, the United States Department of Justice's *Touhy* regulations, by virtue of the Supremacy Clause, prevent any state court from enforcing a subpoena against federal agencies and officers. Here, however, the discovery at issue is also covered by the confidential informant/law enforcement privilege and thus, even without consideration of the *Touhy* issues, the defense would not be entitled to discover this information. Thus, the Court should reconsider its order disclosing the FBI's confidential informant file.

3

EXHIBIT 11

### A. Sovereign Immunity Precludes the Disclosure of Contents of the File for which the FBI has not consented to Disclosure.

This Court has ruled, over the FBI's objection, that the contents of the FBI's confidential informant file will be released to the defense. This ruling by the Court is contrary to the doctrine of sovereign immunity and should be reconsidered. *See, e.g., Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998) (copy attached as Ex. 3); *United States v. Williams*, 170 F.3d 431 (4th Cir. 1999) (copy attached as Ex. 4).

*Smith v. Cromer* is particularly instructive here. In that case, the defendant had worked as a confidential informant for the Drug Enforcement Agency. 159 F.3d at 877. He was being prosecuted in state court for state narcotics changes. *Id*. He sought to compel the production of his own confidential informant file. *Id*. There, as here, the DEA had provided a copy of the file to the state court for an *in camera* review. The state court found the information to be discoverable and ordered it produced to the defendant. The DEA removed this issue from state to federal court and the federal district court granted a motion to quash and for protective order. *Id*.

The Fourth Circuit affirmed the orders quashing the subpoena and entering a protective order. The court first found that sovereign immunity precluded the state court from enforcing the subpoenas and disclosing the documents. *Id*. at 879. The court rejected arguments that the federal government had waived this immunity by providing partial disclosures to the defendant or by providing a copy of the file to the state court for an *in camera* review. *Id*. at 880. The court concluded that the state court lacked any authority to enforce the subpoenas. *Id*. The court noted that the criminal defendant had a remedy of seeking review of the DEA's decision not to release the file under the Administrative Procedures Act ("APA"). (The court also found that disclosure was not warranted in light of the confidential informant privilege as explained in Part B., below).

Similarly, the fact that the FBI, rather than a state agency, is in possession of information relevant to this state prosecution does not change the analysis. In *United States v. Williams*, the defendant was facing state murder charges and had served a subpoena on the FBI seeking disclosure of the FBI's file regarding the homicide. 170 F.3d at 432. The defendant argued that sovereign immunity did not bar his request for the file "because the FBI was assisting state authorities in their investigation of the state crimes for which he was ultimately indicted." *Id*. at 434. The court rejected this argument, held that the FBI could not be compelled to disclose the information, and noted that if the defendant was dissatisfied with the FBI's response, he was "not without recourse" because he could seek review of that determination under the APA. *Id*.

Sovereign immunity precludes a state court from ordering the disclosure the contents of a federal agency's file over that agency's objections pursuant to its *Touhy* regulations.

4

EXHIBIT 11

The FBI has not waived sovereign immunity and objects to this Court proceeding as indicated in its November 24, 2009, oral order. Therefore, the Court's order should be reconsidered.

### B. The Law Enforcement and Confidential Informant Privileges Prevent Disclosure of the Contents of the Confidential Informant file.

Even setting aside issues of sovereign immunity, the FBI's confidential informant file should not be disclosed because it is privileged. The U.S. Supreme Court recognized the law enforcement privilege in *Rovario v. United States*, 353 U.S. 53 (1957). In that case, the Court found that a request for the disclosure of the identity of a confidential informant "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

The privilege is held by the <u>government</u>, not by the confidential informant. *Rovario*, 353 U.S. at 59. The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Myerson (In re Dep't of Investigation)*, 856 F.2d 481, 484 (2d Cir. 1988). The party seeking documents protected by the law enforcement privilege has the burden to establish a sufficient need for the documents. *Collins v. Shearson/American Express, Inc.*, 112 F.R.D. 227, 228 (D.D.C. 1986). Relevance alone does not establish a need. *Id.* at 229-30. Further, Congress has expressly recognized the need to protect this type of information in the context of the Freedom of Information Act. That Act expressly exempts from disclosure information that would disclose techniques and procedures for law enforcement investigations. *See* 5 U.S.C. § 552(b)(7)(E).

Colorado courts have also recognized a law enforcement privilege under state law, and have interpreted it in a similar manner as federal courts have interpreted the federal privilege. *See, e.g., People v. District Ct. in and for County of Pueblo*, 904 P.2d 874, 877 (Colo. 1995) (en banc) (recognizing privilege "to maintain anonymity of persons who furnish law enforcement officers with information relating to crimes"; citing cases). As the Colorado Supreme Court held in the context of the informer privilege, the defendant must establish a "<u>reasonable basis in fact</u> to believe the informant is a likely source or relevant and helpful evidence <u>essential</u> to the determination of guilt or innocence" to meet his burden to overcome the privilege. *Id.* at 877 (emphasis added; internal citation omitted). The possibility that the information may be used for impeachment "does not establish the defendants' need for disclosure of the informant's identity" nor does the defendant's unsupported assertion of need. *Id.* at 877, 879. *See also People v. Martinez*, 51 P.3d 1029, 1032 (Colo. Ct. App. 2002) ("An accused is not entitled to the disclosure of the informant based upon the bare assertion that his or

5

EXHIBIT 11

her defense requires it, or upon mere speculation about the information the informant might have supplied."), *reversed in part on other grounds*, 69 P.3d 1029 (Colo. 2003) (en banc). Thus, even if the federal privilege did not apply, this information is also privileged under state law.

This Court thus must engage in the *Rovario* balancing test. Here, as the Court has repeatedly found on prior occasions, this balancing does not favor a wholesale disclosure of Mr. Rodarte's confidential informant file.

First, the public interest is overwhelmingly against public disclosure. As is found in *United States v. Myerson (In re Dep't of Investigation)*, these interests include preventing disclosure of law enforcement techniques and procedures, preserving the confidentiality of sources, to protect witness and law enforcement personnel, safeguarding the privacy of individuals involved in an investigation, and otherwise preventing interference with an investigation." 856 F.2d at 484. Here, all of these factors weigh against disclosure. As the attached declaration shows, disclosure of this file would reveal sensitive law enforcement techniques and procedures, would identify a confidential informant, would reveal the subject of another investigation, and would interfere with an active investigation being conducted by the FBI in another state, as well as interfere with future investigations and future recruitment and use of confidential informants.

Second, this public interest does not remotely begin to be outweighed by the Defendants' rights to prepare their defense. Defendants have not met their burdens of showing a sufficient need for these documents. All documents from the file relating to the incident at issue in this case have been released. Defendants have provided the Court with nothing more than hypothetical arguments from their counsel that the file might possibly contain exculpatory information or some information about which they may conceivably be able to cross-examine law enforcement witnesses. Here, this factor is even stronger against disclosure because the Court has been able to review the file to see if it contains any such information that might be helpful to the defense. The Court has already ruled on prior occasions that it does not.

Moreover, **the FBI holds this privilege; Mr. Rodarte does not**. The Court seems to be swayed by the fact that Mr. Rodarte is both the confidential informant and one of the Defendants. However, that fact does not change this analysis or entitle him, much less his co-defendants, to the contents of the file. In fact, whether or not the confidential informant has become a defendant who is being prosecuted is not one of the factors to be weighed by the Court. The confidential informant file is the FBI's file, and not a file maintained by, or for the benefit, of Mr. Rodarte. The file contains documents and information to which Mr. Rodarte has not been, and could not be, privy to, regardless of whether he had later been prosecuted. (Ex. 1 ¶ 6.) Thus, courts have denied access to confidential informant files even where the confidential informant himself was being prosecuted. *See, e.g., Smith*, 159 F.3d at 879-80.

Here again, *Smith v. Cromer* is very instructive. In that case, the defendant argued that he was acting as a federal informant during the time that he allegedly committed the state narcotics charges—*i.e.*, if true, this information would have provided a <u>complete defense</u> to the crime, not just some potential information for cross-examination—and that his constitutional rights would be violated if he was not provided access to the DEA's confidential informant file about him. The Fourth Circuit disagreed. The Fourth Circuit affirmed the district court's determination that—as is the case here—the defendant "did not provide the court with specific facts that would likely be in his informant file that would establish that he was acting as a federal cooperating individual at the time of his alleged violation." *Id.* at 882. The court also noted that the district court found that the defendant's desire to introduce evidence of his other cooperating activities—as Mr. Rodarte seeks to do here—was not sufficient to compel disclosure. *Id.* Further—as is also the case here—the district court noted that the defendant would have the opportunity to cross examine the DEA agent about his confidential informant activities. *Id.* Finally, the court found that the defendant's Sixth Amendment right to compulsory process would not be violated by quashing the subpoenas issued to Department of Justice officials. *Id.* at 882-83.

Still further, there is no basis for the Court to disclose the entirety of the file to Mr. Rodarte's co-defendants. The other Defendants have set forth no right at all to the contents of that file. Their case has been severed from Mr. Rodarte's case. All relevant documents about the incident at issue, the amounts that Mr. Rodarte had been paid, and his agreement with the FBI have been disclosed. At the hearing on November 24, the Court expressed some speculation that Mr. Rodarte may have informed the co-defendants of his confidential informant activities. However, it noted that it could not "guess" whether that had occurred, and the FBI is unaware of any other information in the record indicating that it did. Further, the fact that Mr. Rodarte might know the identity of another confidential informant discussed in the FBI's confidential informant file does not mean that his co-defendants do. There is no basis for allowing the disclosure of this information to the co-defendants.

The use of a protective order in an effort to mitigate the harm that would result from the release of this information is inadequate to address the concerns set forth by the FBI. It would still allow criminal defendants themselves—two of whom are not in custody at this time—access to this information, which could potentially be used for improper purposes, such as to inform targets of the existence of the investigation or endanger the safety of other confidential informants or law enforcement officers. As the Court noted, the trial in this case will be open to the public and, if the contents of the file are disclosed in open court, the protective order will be meaningless. Further, this case has received press attention. Release of this information into the public domain, even if inadvertent, would cause irreparable harm to the FBI. <u>The FBI does not consent to the release of this information, even subject to a protective order</u>.

EXHIBIT 11

The FBI understands the Court's desire to move this matter to a resolution and to preserve the rights of Defendants. The U.S. Supreme Court's test for applicability of the confidential informant privilege expressly acknowledges these concerns. This Court has skillfully and appropriately addressed the concerns of all parties involved in its prior rulings on this issue. However, the Court's decision last week that a full-scale disclosure of the entire file to all Defendants is not warranted under the privilege.

### C. The Court Should Consider Other Less-Intrusive Alternatives.

As several courts have noted, preventing disclosure of the confidential informant file does not leave Defendants without a remedy. Defendants can bring an action under the Administrative Procedures Act. Here, despite the facts that Defendants have been on notice for several months that the FBI was not going to turn over the confidential informant file in its entirety and that the trial in this matter has been continued, to undersigned counsel's knowledge, none of the Defendants has pursued this avenue of relief.

The FBI respectfully submits that several alternatives exist that would preserve the privilege, meet the standards set forth by the U.S. Supreme Court for determining when disclosure is warranted, and preserve the rights of Defendants to present their defense to the jury.

a. First, the Court has already reviewed the entire confidential informant file. If the Court believes that any other portions of that file potentially meet the *Rovario* test for disclosure, it could hold a hearing on that issue and determine whether to produce those portions only.

b. Second, to the extent that the Court believes that Mr. Rodarte is entitled to portions of the file regarding out-of-state activities, the FBI respectfully requests that it follow the procedure that it outlined during the hearing held with Mr. Rodarte's counsel, which would allow the FBI to set forth specific objections prior to the release of any such information.

c. Third, the FBI could prepare a redacted form of the confidential informant file and produce it to the Court for *in camera* review. The Court could then determine if the confidential informant file, as redacted, meets the balancing test set forth in *Rovario*. If it does, then the Court can simply release the redacted file.

d. To the extent that Mr. Rodarte believes there are specific facts in his file that he plans to use in his defense, he could propose a stipulation regarding those facts or submit those facts to the FBI, who could then confirm or deny in writing whether they are contained in the file, thereby allowing Mr. Rodarte to question or cross-examine FBI agents about that

information at his trial.

  e.  Finally, as mentioned above, Defendants have the alternative remedy of bringing an action under the Administrative Procedures Act, which they have apparently declined to pursue to date.

  The FBI respectfully submits that the Court's proposed course of action—to produce the file without any redactions—violates sovereign immunity, does not comply with Supreme Court precedent, and could seriously endanger on-going and active investigations, as well as the safety of individuals involved in those investigations. As the Court is aware, the file has references to serious threats of violence and murder. Releasing the file could result in danger to law enforcement personnel and confidential informants. The FBI urges the Court not to cause irreparable harm by releasing these documents, to which Defendants are not entitled.

  If the Court denies this motion, the FBI reserves the right to remove the issue to federal court pursuant to 28 U.S.C. § 1442, and move to quash the subpoenas and for a protective order. *See Smith*, 159 F.3d at 879 (explaining removal procedure). In that event, the federal court will determine whether the subpoenas should be quashed and the confidential informant file should be released. Once that decision is made, the issue will be remanded and the state prosecution will remain pending before this Court. It will remain up to this Court how to proceed in this matter after the federal court issues its decision on the motion to quash. For this reason, the FBI requests that the Court stay any release of the contents of the file until at least one week after it rules on the motion to reconsider. If the Court denies the motion to reconsider, the FBI will then have one week to decide whether to seek relief in federal court. **Again, the FBI does not consent to the Court releasing a copy of its file that was provided to the Court for the limited purpose of allowing the Court to conduct an *in camera* review**. Therefore, in the event that the Court denies the motion to reconsider, the FBI respectfully requests that the Court stay the disclosure of the file until the FBI can determine whether to remove this issue to federal court to obtain an order quashing the subpoenas and prohibiting the release in whole or in part.

## CONCLUSION

  For the reasons set forth above, the defense is not entitled to discover the entire CI file of Mr. Rodarte. Discovery of this information is barred by sovereign immunity, the Department of Justice's *Touhy* regulations, and by privilege. The Court should reconsider its order that the file will be released and, if it declines to reconsider the order, should stay any dissemination of the file in order to allow the FBI to pursue alternative relief as appropriate.

WHEREFORE, the FBI and SA Goffi respectfully request that this Court reconsider its oral ruling from November 24, 2009, and stay any dissemination of the CI file for seven days after an order on the motion to reconsider.

DATED: December 2, 2009          DAVID M. GAOUETTE

U.S. Attorney

*[signature]*

Amy L. Padden, Colo. Bar No. 28372
Assistant U.S. Attorney

Attorneys for SA Robert Goffi and the FBI

10

EXHIBIT 11

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2009, I served a copy of the foregoing by U.S. Mail and by fax (without exhibits) to the following:

Counsel for Plaintiff:

Terry Sample
El Paso District Attorney's Office
105 E. Vermigo
Colorado Springs, CO 80903

Counsel for Defendant Cisneros:

Shimon Kohn
2 N. Cascade Avenue, Suite 550
Colorado Springs, CO 80903

U.S. Attorney's Office

11

EXHIBIT 11