DECLARATION OF STEVEN M. SMITH, SUPERVISORY SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, Steven M. Smith, declare, pursuant to 28 U.S.C. § 1746, the following:

1. I am a Supervisory Special Agent (SSA) for the Federal Bureau of Investigation (FBI). I am assigned to the Colorado Springs Resident Agency in the Denver Division. The information provided herein is based upon my personal knowledge, and my review of and consideration of information available to me in my official capacity, including information furnished to me by Special Agents and other employees of the FBI in the course of their official duties.

2. I am familiar with the FBI's policies and practices regarding the protection of sensitive information related to confidential informants. I am also familiar with the criminal cases pending in El Paso County District Court related to former FBI informant Robert Rodarte.

3. The purpose of this declaration is to explain the harm that could reasonably be expected to result from the contemplated disclosure of what is essentially Rodarte's entire FBI informant file. Because this is a public declaration, I will discuss information from Rodarte's informant file only in general terms because providing details would require me to disclose the sensitive information at issue.

4. With respect to the several subpoenas served on the FBI seeking Rodarte's informant file, the FBI's responses have been governed by Federal regulations set forth at 28 C.F.R. § 16.21

EXHIBIT 15

et seq., and the principles of sovereign immunity expressed by the Supreme Court in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In response to each of the subpoenas, the FBI has advised the court and the defendants of the controlling law. In accordance with the pertinent Federal regulations and without waiving sovereign immunity against any compelled disclosure of materials by the court, the FBI has provided certain materials from Rodarte's file to the parties in this case and has submitted the entire file to the court for *in camera* review.

5. The FBI is not certain which specific documents from Rodarte's file that the court is now considering for release to the defendants' attorneys. Based on the transcript from the court proceeding on November 24, 2009, the FBI's understanding is that the court intends to release, in unredacted form, all the documentation from Rodarte's file, apart from the limited information therein regarding possible drug smuggling in a prison setting and possible corruption in a Colorado local law enforcement office.

6. Rodarte's file is comprised of a main volume and four sub sections, Sub A, Sub CE, Sub OIA and Sub V. The file, as a whole, contains approximately 260 pages of documents. The FBI's concerns about disclosure extend to each section of the file.

7. The main volume of the file contains administrative paperwork regarding informants. Disclosure of this portion of the file would reveal all database checks run by the FBI for the initial evaluation of informants, all FBI investigations linked

EXHIBIT 15

merely to the name "Robert Rodarte", the techniques used by the FBI to task informants, the human and technical resources used by the FBI to monitor informants during operations, and the techniques used by the FBI to discretely monitor informant activity outside the context of taskings. Rodarte does not have any prior knowledge of this type of information. He was never privy to the contents of the informant file that the FBI maintains about him. If the full scope of the information contained in the main volume of Rodarte's file became known, the ability of the FBI to effectively recruit and operate any informant in the future could be impaired.

8. The Sub A section of the file essentially contains the information provided by Rodarte on various matters. The FBI has already disclosed one document from this part of the file that describes information provided by Rodarte regarding his co-defendant James Cisneros. Also, this part of the file appears to contain the documents regarding possible prison drug smuggling and possible law enforcement corruption which the court apparently is not considering for disclosure. In the FBI's view, the remainder of the information in this section of the file concerns possible criminal activity unrelated to the offenses charged against Rodarte or the other defendants. Moreover, one document in this part of the file contains singular reporting regarding a threat against Rodarte. The confidential source reporting the threat could potentially be identified based only on the information provided. Also, of particular concern in the Sub A section of the file are documents that relate to the out of

EXHIBIT 15

state activities by Rodarte. These documents identify the subject of an ongoing investigation in another FBI office. The documents also contain the symbol number for another source working that ongoing investigation. If the current or potential subjects from that out of state matter become aware of the scope of the investigation and the use of sources in that investigation, these current or potential subjects could take action to frustrate the ability of the FBI to successfully conduct the investigation.

9. With respect to the Sub CE section, that part of the file documents the payments made to Rodarte. The FBI has already turned over a summary of Rodarte's payment history showing the amounts he was paid for his services and what he was paid for the expenses he incurred. The CE section contains only the administrative documents regarding all requests for payments to and the receipt of payments by Rodarte. The particularly sensitive portions of this sub section are documents which were submitted to justify the payment requests. These documents describe in detail the investigations Rodarte worked on, including the major ongoing investigation Rodarte worked on out of state. Rodarte was never made aware of the specific information included in these payment requests, or how the amounts he ultimately received were determined. Disclosure of such information could be harmful to the FBI for two reasons. First, if Rodarte or any others were made aware of how informants are evaluated for purposes of compensation, the FBI's ability to recruit and operate informants in the future could be frustrated.

EXHIBIT 15

Second, as stated above, if Rodarte or any others became aware of the scope of the ongoing investigation out of state, the effectiveness of that investigation could be undermined.

10. The Sub OIA section of the file contains only the document required by FBI policy and Attorney General Guidelines to authorize informants to engage in "otherwise illegal activity" (OIA). The FBI has already disclosed this document to the defendants and fully explained its purpose. Disclosure of this document again seems unnecessary and potentially confusing.

11. The Sub V section of the file contains the documents utilized by the FBI to evaluate informants. Disclosure of this portion of the file would reveal how the FBI categorizes sources, where the FBI recruits sources, and how the FBI measures the effectiveness of sources. Also in this section of the file are documents describing in detail Rodarte's work on the pending out of state investigation. As with the sub sections described above, disclosure of the information in the Sub V section could harm the FBI's ability to recruit and utilize informants, and undermine the pending out of state investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of December, 2009.

Steven M. Smith
Supervisory Special Agent
Federal Bureau of
 Investigation
Colorado Springs, Colorado